LEE E. SHELDON, Bar No. 263310
lsheldon@littler.com
ANGELA J. RAFOTH, Bar No. 241966
arafoth@littler.com
SAMLECIA D. GAYE, Bar No. 296981
sgaye@littler.com
LITTLER MENDELSON, P.C.
101 Second Street, Suite 1000
San Francisco, California 94105
Telephone: 415.433.1940
Fax No.: 415.399.8490

Attorneys for Defendant,
BEAZLEY USA SERVICES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KIYANA BROWN, on behalf of herself, the other aggrieved employees, and all others similarly situated,

Plaintiff,

v.

BEAZLEY USA SERVICES, INC.; ANDREW ORTIZ; JENNY HAN; and DOES 1-50, inclusive,

Defendants.

Case No. 3:24-cv-9035

*[Removed from San Francisco Superior Court Case No.: CGC-24-619614]*

**DECLARATION OF LEE SHELDON IN SUPPORT OF DEFENDANT BEAZLEY USA SERVICES, INC.'S REMOVAL OF CIVIL ACTION TO FEDERAL COURT**

**DECLARATION OF LEE SHELDON**

I, Lee Sheldon, hereby declare and state as follows:

1. I am an attorney duly admitted to practice before the courts of the State of California. I am an attorney with the law firm Littler Mendelson, P.C., attorneys of record in the above-entitled action for defendant, BEAZLEY USA SERVICES, INC. ("Defendant"). I am familiar with the documents and pleadings on file in this action and have personal knowledge of the facts stated herein. Further, if called and sworn as a witness, I could and would competently testify thereto.

2. On or about November 6, 2024, Plaintiff Kiyana Brown ("Plaintiff") filed her Complaint, (Case No. CGC-24-619614) in the Superior Court of the State of California, County of San Francisco ("State Action").

3. On November 13, 2024, my office accepted electronic service of the following documents from Plaintiff: (1) Complaint; (2) Summons; (3) Civil Case Cover Sheet; (4) Alternative Dispute Resolution Information ("ADR") Package; and (5) Notice to Plaintiff for Initial Case Management Conference. A true and correct copy of the Summons and Complaint "in the State Action ("Complaint") is attached hereto as **Exhibit A** and the Summons, Civil Case Cover Sheet, ADR Package, and Notice to Plaintiff is attached hereto as **Exhibit B**.

4. On December 12, 2024, Defendant filed its Answer in San Francisco Superior Court, which contained a general denial of all claims. A true and correct copy of Defendant's Answer is attached as **Exhibit C.**

5. Attached as **Exhibit D** is all additional process, pleadings, and orders served upon, received, or retrieved by Defendant in this action while this action was pending in state court.

6. A copy of the Notice of Removal will also be filed with the Clerk of the Superior Court for the State of California, County of San Francisco.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 13th day of December 2024 at San Francisco, California.

*/s/ Lee E. Sheldon*
LEE E. SHELDON

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

# EXHIBIT A

ERIK J. CHRISTENSEN, Bar No. 314595
*erik@goldsummit.legal*
**GOLD SUMMIT LEGAL, INC.**
548 Market St., Ste. 41750
San Francisco, CA 94104
Tel: (415) 516-2760

JAMES K. MOORE, Bar No. 279454
jamesmoorelawfirm@gmail.com
assisstant@jamesmoorelawfirm.com
**LAW OFFICE OF JAMES K. MOORE, INC.**
1155 High Street
Auburn, CA 95603
Tel: (530) 885-6286

Attorneys for Plaintiff
KIYANA BROWN

ELECTRONICALLY
**FILED**
*Superior Court of California, County of San Francisco*
**11/06/2024**
**Clerk of the Court**
BY: AUSTIN LAM
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

KIYANA BROWN, on behalf of herself, the other aggrieved employees, and all others similarly situated,

Plaintiffs,

v.

BEAZLEY USA SERVICES, INC.; ANDREW ORTIZ; JENNY HAN; and DOES 1-50, inclusive,

Defendants.

Case No.: **CGC-24-619614**

**INDIVIDUAL, PAGA, AND CLASS ACTION COMPLAINT**

1. Discrimination Based on Gender and Disability;
2. Failure to Engage in the Good-Faith Interactive Accommodation Process;
3. Failure to Accommodate Disability;
4. Retaliation in Violation of Labor Code §§ 98.6, 233, and 1102.5;
5. Retaliation in Violation of FEHA;
6. Failure to Prevent Discrimination and Retaliation;
7. Negligent Hiring, Supervision, and/or Retention;
8. Wrongful Termination;
9. Intentional Infliction of Emotional Distress;
10. Failure to Produce Employment Records;
11. Private Attorneys General Act ("PAGA"); and,
12. Wage and Hour Class Action.

COMES NOW Plaintiff KIYANA BROWN who, on behalf of herself and all other similarly situated employees, hereby files this Complaint and alleges as follows.

## THE PARTIES TO THIS CIVIL ACTION

1. Plaintiff KIYANA BROWN ("**Ms. Brown**" or "**Plaintiff**") is an African American woman, single mother, and resident of the State of California. She is a graduate of Carrington College where she earned her Associate of Science and (or) Certificate in their Medical and Clinical Assistant program in or around June 2022. She worked for Beazley as an Underwriting Assistant from approximately January 31, 2022 until August 9, 2024, and she was assigned to Beazley's office in San Francisco, California.

2. Defendant BEAZLEY USA SERVICES, INC. is a subsidiary of Beazley PLC, a British insurance company doing business throughout Europe, North America, and Asia. Beazley PLC is listed on the London Stock Exchange and FTSE 100 index under the ticker BEZ, and on information and belief, it boasted an annual net income of $1,026.8 million in 2023. Beazley PLC and its subsidiaries (including Beazley USA Services, Inc.) share the same website (www.Beazley.com), which does not distinguish between the various entities (*i.e.*, they are uniformly presented as "Beazley"). Hereafter, Defendant BEAZLEY USA SERVICES, INC. is, alone, referred to as "**Beazley.**" On information and belief, it employs approximately 890 people in the United States, many of whom work in California, and its California headquarters is located at 101 California Street, #1850, San Francisco, right in the heart of the Financial District.

3. Defendant ANDREW ORTIZ ("**Defendant Ortiz**") is a non-black male who has worked for Beazley from October 2022 to present as an Assistant UCO (Underwriting and Claims Operations) Manager. On information and belief, this role required Defendant Ortiz, at all times relevant to this lawsuit, to manage, train, and mentor junior staff and to follow Beazley's policies and procedures applicable at the time. Prior to joining Beazley, Defendant Ortiz worked in finance for approximately 11 years.

4. Defendant JENNY HAN ("**Defendant Han**") is an Asian female who is over the age of 40 and worked for Beazley from approximately June 2014 to present as an Underwriter in Beazley's office in San Francisco, California. On information and belief, **Defendant Han** is a resident of the

state of California. On information and belief, prior to this, Defendant Han worked for Great American Insurance as Vice President of its Environmental Division, which is illustrative of her supervisory capability and/or weight of her opinion and direction at Beazley

5. *Doe Defendants*. Plaintiff does not know the true names and capacities, whether individual, corporate or otherwise, of the defendants sued herein as DOES 1 through 50, inclusive, and therefore Plaintiff sues these defendants by such fictitious names. Plaintiff will amend this Complaint to state the true names and capacities of such fictitiously named defendants when their identities are ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged and that Plaintiff's damages, as alleged, were directly or proximately caused by these defendants. Hereafter, Beazley, Mr. Ortiz, and DOES 1 through 50, are collectively referred to as the "**Defendants**".

## VENUE AND JURISDICTION

6. Jurisdiction is proper because Plaintiff the class members, and the aggrieved employees (defined *infra*) worked for Beazley in California, all actions relevant to this Complaint occurred in the State of California, and Plaintiff asserts no federal claims herein.

7. Venue is proper because Plaintiff and Ms. Han were assigned to Beazley's office in San Francisco County, which is the nerve center of Beazley's California operations. Venue is also proper because Beazley intentionally and directly did business in San Francisco County, California and this is the location of many of the relevant documents and witnesses in this litigation. Furthermore, on information and belief, **Defendant Han** is a resident of the state of California and works in Beazley's San Francisco, California office.

8. The subject matter jurisdiction is proper because this action incorporates an amount in controversy exceeding $35,000.

## GENERAL ALLEGATIONS

9. On January 13, 2022, Beazley offered Ms. Brown employment as a full-time Underwriting Assistant, at the hourly rate of $25.65 per hour, paid bi-weekly (*i.e.*, every two weeks). Beazley also offered Ms. Brown 22 hours of Paid Time Off ("**PTO**") each year, along with premium health benefits (*e.g.*, medical, dental, etc.) and more. Ms. Brown's supervisor would be Mary Kinsley,

Assistant UCO Manager, and Ms. Brown would be assigned to Beazley's San Francisco, California office, although she would be permitted to work fully remote for reasons that included the ongoing COVID-19 Pandemic. Ms. Brown accepted Beazley's offer and her first day of work was <u>January 31, 2022</u>.

10. Ms. Brown admirably performed her duties at Beazley, which the company recognized with various bonuses and pay increases during her employment. This included a $500 non-discretionary (target-based) bonus *and* a $2.97 per hour pay raise ($28.62/hr) on or about <u>January 16, 2023</u>, and another non-discretionary bonus totaling $13,950 in or around <u>February 2024</u>.

**<u>Wage and Hour Allegations</u>**

11. Ms. Brown's wage and business expense issues (and related penalties) in paragraphs 11-25 herein, therefore, are representative of those experienced by Beazley's other California employees because of Beazley's policies and/or practices of engaging in the conduct described herein. For example, at all times relevant to this litigation, Beazley had a policy and/or practice of engaging in the wage and hour violations with its non-exempt employees throughout California, set forth below. Beazley's failure to reimburse its employees for their reasonable business expenses, however, extended to its exempt employees.

12. Problematically, Beazley was – at all times relevant to this matter – aware of its obligations on how and when to pay and reimburse its employees, when to provide them with meal and rest periods, and the other issues set forth herein. This is because, as a multi-national company, it had the resources and knowledge of the applicable law, which Beazley also referenced in many of its own documents and policies. Beazley simply (and consistently) refused to follow the law, to its employees' detriment, because it saved the company money, which helped its stock price and padded the wages and bonuses of its more senior executives.

<u>Unreimbursed Business Expenses</u>

13. Beazley provided Ms. Brown with a company-owned laptop, a headset, and little else that Ms. Brown reasonably needed or used in the performance of her duties. For example, Beazley did not supply Ms. Brown with a work phone (or the option to use a work phone), a computer monitor beyond her small laptop screen, a printer, paper, or pens or pencils. Beazley was, at all times, aware

that Ms. Brown needed such items to perform her duties, but it did not reimburse her purchases of the same for these purposes. For example, Beazley did not reimburse Ms. Brown for her internet, electricity, water, or cell phone bills, which she incurred while working for Beazley. It also did not compensate her for her use of her personally owned equipment, including her computer monitor, printer/scanner, or her purchases of paper, pens, and pencils so that she could perform her duties. Finally, while Beazley eventually provided Ms. Brown with a chair, desk, and computer monitor, it did not do so until just before it terminated her.

14. While Beazley appears to have provided Ms. Brown with a partial reimbursement for her cell phone use in her first three paychecks ($50, $25, then $25 for a total of $100), Beazley halted (*i.e.*, failed to pay) this reimbursement from March 14, 2022 until Ms. Brown's termination. Instead, Beazley argued that Ms. Brown could simply use voice over internet protocols in lieu of her phone, but this was not practical because this meant Ms. Brown was not reachable any time she stepped away from her laptop. Yet Beazley demanded that Ms. Brown remain "available" (*i.e.*, at her laptop) at *all* times and to promptly respond to any work-related communications.

15. Therefore, Ms. Brown's supervisors demanded that she give them her personal cell phone number, which they called and texted whenever they wanted something from her and she did not immediately respond (*e.g.*, if she was in the restroom, asleep, or otherwise off-duty). Ms. Brown was not given the option not to provide her supervisors with her phone number or to ignore their phone calls and texts thereon. Her supervisors' preferred method of contacting Ms. Brown was through her personal cell phone, be it text message or phone calls. In sum, Beazley *required* Ms. Brown to use her mobile phone to perform her work duties, but it did not properly reimburse her for this use beyond her first one or three paychecks.

<u>Meal and Rest Period Violations</u>

16. Beazley consistently denied Ms. Brown her meal and rest breaks. For example, Ms. Brown's supervisors, coworkers, and clients required her to be logged on and available to quickly respond to all tasks, calls, texts, and instant messages (*e.g.*, through Microsoft Teams, which Beazley obligated its employees to use). In other words, Ms. Brown was either constantly working or engaged to wait for communications and work tasks. If she refused, or simply was not available for any reason

(*e.g.*, after hours or restroom breaks), then Ms. Brown's coworkers and supervisors would reprimand her and threaten her with formal punishment up to termination. This meant that Ms. Brown could not leave her work station for meal breaks. This also meant that Ms. Brown had to work (in whole or in part) through *all* of her meal and rest breaks.

17. However, Beazley required Ms. Brown to log in its ADP portal that she took a full, timely, and uninterrupted meal break each day by logging that she took a half-hour, unpaid meal period before her fifth hour of work. Through this practice, Ms. Brown learned that Beazley expected her to log that she took a full meal period from approximately 12:00 p.m. to 12:30 p.m. each work day. Beazley's time-entry portal did not give Ms. Brown the option to submit that she took a short, untimely, or interrupted meal *or* rest break. Beazley's portal also would not let Ms. Brown *skip* entering a meal period if she missed one; failure to enter a compliant meal break meant that she could not submit her time *at all*. And, Beazley repeatedly reminded Ms. Brown that she would only be paid for time that she was able to submit through said portal. This meant that Beazley *required* Ms. Brown to falsely enter that she received legally compliant meal periods if she wanted to get paid at all.

18. Ms. Brown also worked several shifts that were longer than 10 hours, yet Beazley did not provide her with the additional meal or rest periods on those days. However, its ADP portal only required Ms. Brown to enter one compliant meal period per day. Like before, this portal did not provide Ms. Brown with a space to affirmatively state that she had missed her second meal break (let alone her rest periods).

19. Beazley then failed to pay Ms. Brown, each pay period, the requisite missed break premium (equal to one hour of her regular rate of pay) for each of her missed and non-compliant meal and rest periods. Not one of Ms. Brown's pay stubs from Beazley reflects any break premium payment(s).

<u>Failure To Timely Pay All Wages Earned</u>

20. Since Beazley required Ms. Brown to enter that she took 30-minute unpaid meal breaks each day, it did not pay Ms. Brown for this time in which she actually worked. In other words, Beazley shorted Ms. Brown approximately 30 minutes of pay each day resulting from its abusive recordkeeping practices. This meant that Beazley not only failed to pay Ms. Brown a minimum wage for these periods,

but it failed to pay her the difference between the local minimum wage and her regular rate of pay also. Furthermore, Ms. Brown frequently worked more than 40 hours each week (*i.e.*, more than 80 hours each pay period), meaning that Beazley also failed to factor these 30-minute periods into Ms. Brown's overtime and doubletime rates of pay.

21. Beazley also did not pay Ms. Brown for all of the time that it required her to work or to be "at work" by being actively engaged to wait for incoming tasks and communications from her coworkers and Beazley's clients. As above, she was required to remain at her laptop so that she could receive and respond to "calls" and messages from these persons both during and outside of regular business hours. While Ms. Brown tried to capture some of this time through edits to her prior entries, doing so just was not possible given the onslaught of calls, texts, emails, messages, and tasks that she received at odd times.

22. Beazley had record of these communications and tasks via its monitoring of internal communications and various workflow tracking. However, Beazley still did not compensate Ms. Brown for all of her time worked in responding to them. Ms. Brown, for the reasons above, regularly worked *more than* 80 hours each pay period (*i.e.*, more than 40 hours each week), but Beazley consistently paid her for only 72 to 80 hours each pay period. In other words, Beazley regularly failed to pay Ms. Brown all of her earned wages each pay period, including her minimum, regular, overtime, and (where applicable) doubletime wages.

23. Beazley also did not pay Ms. Brown any manner of late wage penalties or interest thereon at any time relevant to this litigation. This includes Beazley's failure to pay all of Ms. Brown's ages earned at the time of her termination on or about August 9, 2024 or within 30 calendar days thereafter.

Unpaid Sick Leave

24. While Beazley rolled its PTO and paid sick leave into one pot of time (approximately 22 days available per annum.), it frequently refused to provide Ms. Brown with sick leave pay during her employment. Alternately, it consistently failed to pay her for all of the sick leave that she did take. This resulted in Beazley further underpaying Ms. Brown whenever she required a few hours, or one or

more days off to recover from any manner of illness, injury, or to care for a similarly afflicted family member.

Inaccurate Pay Stubs & Records

25. As above, Beazley did not accurately track Ms. Brown's time, and it failed to pay her for all of her reasonable business expenses, meal and rest breaks (premiums for each missed, untimely, or interrupted break), and wages in each previously mentioned form. This means that each pay stub (*i.e.*, wage statement) that Beazley issued Ms. Brown was inaccurate. (Lab. Code § 226(a) [requirements for accurate, itemized pay stubs].) The same facts above show that Beazley failed to maintain accurate records on Ms. Brown throughout her employment, to her detriment and to its gain.

**Plaintiff's First Pregnancy And Return To Work**

26. Ms. Brown received positive feedback from her training supervisor, Mary Kingsley, who told her "you're catching on great!" or words to this effect. Ms. Kingsley otherwise told Ms. Brown that she was doing a great job.

27. Promptly after Ms. Brown's first day of work at Beazley in early 2022, her senior coworker, Defendant Han, told her not to log off of (or step away from) her work computer because work had to get done. Such instruction was further illustrative of Beazley's policy and practice of requiring its employees to skip or work through their breaks.

28. Around this same time, Ms. Brown learned – and shared with her coworkers – that she was quite far along in her pregnancy with her first child. Therefore, Ms. Brown found it incredibly difficult to work such long periods without breaks and while having to remain at her work station. But she did so as Beazley required it. However, the stress from this impacted Ms. Brown's unborn daughter, who required significant pre-birth monitoring to ensure her survival. Ms. Brown then gave birth to her son on or about April 9, 2022. Her daughter was diagnosed with fetal growth restriction due to the stress and lack of nourishment during pregnancy, and to this day she struggles with this by being undersize (wearing 6-month-aged toddler's clothing at the time of this pleading, despite being 16 months of age).

29. Plaintiff returned from pregnancy leave on or about October 10, 2022. Her new direct supervisor was Sara Lawler, Assistant UCO Manager. Ms. Lawler's supervisors, frustrated with Ms.

Brown's prior departure, told Ms. Lawler to retrain Ms. Brown. However, Ms. Lawler refused because Ms. Brown was doing so well. As Ms. Lawler told Plaintiff around this time, "you do not need this, you remember everything from before you went on leave. You're doing great", or words to this effect.

30. Also in October 2022, Beazley hired Defendant Ortiz.

**Plaintiff's Second Pregnancy**

31. On November 15, 2022, Ms. Brown learned that she was pregnant again, and she immediately asked Ms. Lawler how to best handle the situation, work-wise. Plaintiff was reasonably concerned that her coworkers and Beazley might not look upon this situation favorable since they were not entirely kind about her first pregnancy or her return therefrom. Ms. Lawler told Ms. Brown that she would handle it and for Ms. Brown's permission to share the news with her leadership team, and Ms. Brown agreed. This information spread fast. Soon Ms. Brown's coworkers, like Defendant Han, knew about Ms. Brown's pregnancy and expressed unmasked annoyance and aggression toward and about Ms. Brown as a result. They criticized her for becoming pregnant, which they labeled as "irresponsible" (even though both pregnancies were with Ms. Brown's steady boyfriend), and they told anyone who would listen how they thought it was unfair that Plaintiff would be allowed to take leave again. Things escalated from there.

32. Ms. Brown's coworkers began piling work onto her, resulting in her working multiple shifts longer than 11 hours without any rest. This got so bad that on or about December 15, 2022 Ms. Brown literally passed out at work from fatigue and lack of nourishment. Even though Ms. Brown's coworkers were aware of this fact, another supervisor told Ms. Brown that it was unacceptable for her to have "logged out" from work like that. Defendant Han and Ms. Brown's other coworkers pile on, telling her that her passing out was her own fault because she could have ordered a sandwich through a delivery service like DoorDash.

33. Ms. Brown reported these incidents to Ms. Lawler, who replied that she would look into it. Around the same time, Ms. Brown's coworkers emailed and texted Ms. Lawler to complain about Ms. Brown not being available because she had passed out from overwork. One wrote, for example, "The problem we have here is that we may not have gotten the changes until last minute and then it needed to bind. We are working with M&A team, lawyers, etc so we have to be able to respond

immediately. We cannot tell our clients that it has to wait until tomorrow. This is unacceptable." Ms. Brown's coworkers, like Defendant Han, then began lobbying to terminate Ms. Brown while trying to set Ms. Brown up for failure.

34. That Ms. Brown was already slated for to receive a $500 bonus and a $2.97 per hour pay raise (to $28.62/hr) effective January 2023 (*i.e.*, in two weeks), these criticisms rang hollow.

35. On or about Friday, December 16, 2022, Ms. Brown worked well over nine hours, again without breaks. Defendant Han then tasked Ms. Brown with a rush job because Plaintiff was still online and the rest of her team had conveniently logged off. The project was incredibly difficult, dealing with a last-minute merger and acquisition with dueling attorneys who made several confusing and last-minute changes to the proposed insurance policy that Ms. Brown was tasked with reviewing and finalizing. Ms. Brown was unable to complete the task because she felt as though she might pass out again. She therefore logged off at approximately 4:00 p.m. (*i.e.*, 30 minutes early) in attempt to quickly drink water and food before returning to work. Ms. Brown's coworkers seized this opportunity to attack her once more.

36. That evening, Ms. Brown's coworker – Courtney Keeney – a Caucasian female and Underwriter at Beazley, sent Ms. Lawler several text messages complaining about Ms. Brown. Ms. Keeney wrote at approximately 7:05 p.m. that Ms. Brown "is not responding to me" and so she asked Ms. Lawler to do Ms. Brown's job for her. When Ms. Lawler said that she could not help because she was not near her computer, and that Ms. Brown appears to be logged off for the evening, Ms. Keeney wrote: "That's really not acceptable, it was common knowledge I needed this quote to go out today and it was binding today. I thought our west coast work hours were until 4:30pm. I haven't heard from Kiyana since 3:30pm today. This is the busiest time of year, everyone knows that and needs to make accommodations." Ms. Lawler replied: "She literally passed out yesterday and has not been taking proper breaks to try and get everything done for you guys. I'm sure she ended up just logging off early if she didn't take her lunch today …"

37. Undeterred, Ms. Brown's coworkers complained about her to other supervisors at Beazley. This grew to the point that Ms. Lawler had to email her senior and same-level supervisors to explain that the misconduct of Ms. Brown's coworkers was "unacceptable" given that they were very

aware that Ms. Brown "is physically passing out due to not eating and drinking water and [trying to] get everything done for her U[nderwriters]. This is what I mean when I say our work is going unappreciated. It is illegal for her to not be taking her breaks …."

38. But Ms. Lawler's advocacy did not help. Beazley instead saw Ms. Lawler as a barrier to its efforts to force her out of the company due to her pregnancy. Therefore, Beazley transferred Ms. Lawler to another team where she could no longer defend Ms. Brown. In her place, Beazley assigned Defendant Ortiz to finish the job. He was up to the task.

39. Defendant Ortiz immediately criticized Ms. Brown for having taken pregnancy leave in the first place. When she introduced herself to Defendant Ortiz, and told him how long she had been with the company, he replied, "well – you've actually been on leave longer than you've been at work!" He then began criticizing Ms. Brown for every little thing, including issues that were not, and could not be her fault. Defendant Ortiz also consistently targeted African American coworkers for unwarranted criticism, including *his own supervisor*, Mr. Daley. For example, Defendant Ortiz would openly degrade and question Mr. Daley during team meetings, attempt to discredit Mr. Daley with other managers, and take vacation each time he knew that Mr. Daley had an important deadline or meeting in order to ensure Mr. Daley lacked any support. Defendant Ortiz did not target persons of other races (or non-pregnant individuals) in this way, including Defendant Han who made several mistakes (including two major ones in one day). Defendant Ortiz said nothing about such incidents.

40. Defendant Ortiz also ignored all of the assaults Defendant Han and Ms. Brown's other coworkers were lobbing at her, including negative group chats that they sometimes included Ms. Brown on or alluded to when talking in her presence. Her coworkers' overall conduct was to ensure that Ms. Brown knew that they did not like her because she was pregnant and/or African American and that their resulting conduct was aimed at getting her to quit or be fired based on these factors. Ms. Brown kept asking Defendant Ortiz for a 1-on-1 meeting so that she could discuss these problems with her, but her consistently ignored her and allowed the problems to fester.

41. Absolutely stressed, Ms. Brown took 22.5 hours of PTO beginning on <u>March 27, 2023</u> so that she could eat, drink water, and sleep without again passing out at work or suffering an emotional

breakdown. She could not resign, though she wanted to, because she had to provide for her infant son and her unborn child. No such PTO pay appears on Ms. Brown's pay stub for that pay period.

42. On May 2, 2023, Ms. Brown had to go to the hospital, and so she alerted Defendant Ortiz. He replied that she had to stay "in the loop" using her personal cell phone, including by installing MS Teams thereon. He also told Ms. Brown that she was required to provide him with a doctor's note from her visit in order to excuse her absence.

43. Ms. Brown finally managed to get a 1-on-1 scheduled with Defendant Ortiz for May 11, 2023 so that she could address her belief that Defendant Han and another colleague, Lawson Benfield, were being dishonest about a situation and trying to blame Ms. Brown for a problem that she did not cause. Ms. Brown wrote Defendant Ortiz:

> Hi Andrew, Just to ensure I use our time in our one on one effectively and do not forget anything. Here are the things I wanted to address. As we have spoken about on several occasions, I am having a problem with one of my underwriters. One specific example is yesterday we had to revise a binder more than 3 times. He then made this seem as if it was my fault, but we had to revise it so many times even though I asked him to review and approve each time we revised. It seems as if he makes up scenarios, stories about me, and goes to his focus group leader but somehow never mentions what actually happened and what he is lacking. In turn she defends him. The direct problems with him has actually stressed me to the point where it effected my pregnancy negatively, and has gone on a while.

Instead of addressing the problem, or even hearing Ms. Brown out, Defendant Ortiz unilaterally canceled the meeting before it began and refused to reset it for another date despite Ms. Brown's repeated requests that he do so.

44. The next day (May 12, 2023), Ms. Brown joined a team video conference where Defendant Ortiz cut Ms. Brown off while she was answering a question stating that nobody should bother listening to her because she "has been on leave more than she has been at work," or words to this effect.

45. Ms. Brown began her pregnancy leave on or about June 2, 2023, the date she gave birth to her daughter. On or about June 3, 2023, Ms. Brown's temporary replacement contacted her saying,

"I don't know how you've been doing this" with regard to dealing with Defendant Ortiz' attacks on Ms. Brown.

46. On November 13, 2023, Defendant Ortiz continued texting and calling Ms. Brown about work-related matters and asking her questions like when she will be back from leave. Ms. Brown happily answered Defendant Ortiz' questions because she wanted to remain a team player. However, Beazley did not compensate Ms. Brown for this time.

47. Ms. Brown returned to work on December 4, 2023, which partially overlapped with Defendant Ortiz' vacation from December 4 through 7, 2024. Upon Ms. Brown's return, she learned that Defendant Ortiz had given all of Ms. Brown's workload and assigned underwriters to a new hire, leaving Ms. Brown with no work to perform. As above, Defendant Ortiz knew that Ms. Brown would be returning at this time.

**Ms. Brown And Her Children Suffer Verified Health Complications**

48. On December 11, 2023, Ms. Brown was forced to take about a week off to care for her newborn daughter who was suffering from Respiratory Syncytial Virus. This caused Defendant Ortiz and Defendant Han to further target Ms. Brown by attacking her character amongst Plaintiff's peers at work, saying that she was just a malingerer for having been pregnant and trying to care for her daughter.

49. On December 19, 2023, Defendant Ortiz told Ms. Brown that he was going to force her to run all of her work through extra quality control steps even though her work did not require this extra attention. Finally having enough, Ms. Brown reported Defendant Ortiz to Beazley's Human Resources team ("**HR**") for harassment, discrimination, and retaliation. However, Beazley did nothing to halt Defendant Ortiz' attacks on Ms. Brown, and on April 5, 2024 Beazley claimed that Ms. Brown's well-founded complaints were "unsubstantiated."

50. In the meantime, on or about March 15, 2024, Beazley saw fit to award Ms. Brown a bonus of $13,950 for her hard work.

51. On April 2, 2024, Ms. Brown's attorneys mailed Beazley a written request asking for copies of her personnel file, pay stubs, time records, and all documents that she signed in the course and scope of obtaining and maintaining her employment with the company. California law anticipates

that U.S. mail arrives within three to five days, and so on information and belief, Beazley received Ms. Brown's inspection request by on or about April 7, 2024.

52. Then, on April 9, 2024, Ms. Brown emailed Lindsey Campos, one of Beazley's HR Managers, asking if Beazley could accommodate her taking some college classes. But Defendant Ortiz and Lindsey Campos replied, telling Ms. Brown that she should take a leave of absence instead and – separately – inferring that she should resign. Ms. Campos then told Defendant Ortiz that he could decide whether to grant Ms. Brown's request. Beazley then denied Ms. Brown's request despite regularly granting such requests for its other employees who had not recently been pregnant or complained of harassment, discrimination, or retaliation. Defendant Ortiz told Ms. Brown her request had been denied because nobody wanted to help her.

53. Feeling unwell and attacked, Ms. Brown returned to her therapist who – deeming Ms. Brown to be in emotional distress – placed her off-work from April 11, 2024 until April 15, 2024. She returned to work on April 16, 2024.

54. On April 23, 2024, Ms. Brown went to the hospital due to pain in her chest, resulting in her needing surgery to remove various cysts in her breasts. Ms. Brown emailed Defendant Ortiz about this, including a doctor's note saying that she would need until April 25, 2024 (*i.e.*, two days) to recover. Defendant Ortiz called Ms. Brown and yelled at her for giving him "late notice" that she would require time off, and he dismissed the fact that Ms. Brown had no idea that she would require leave and that she had informed him as soon as she learned about it. He became even angrier on April 25, 2024, when Ms. Brown's doctor suggested that she required more time to recover than anticipated, placing her off-work through Sunday, April 28, 2024.

**Beazley and Defendant Ortiz Then Punish Ms. Brown For These Health Complications**

55. Defendant Ortiz then formally wrote-up Ms. Brown on Friday, May 3, 2024. His reasons for this punishment were Ms. Brown:

A. "Logging out early" on April 18, 2024, despite this being caused by Ms. Brown's work laptop failing, which required lengthy tech support to remedy. Ms. Brown did not voluntarily "log out" of work, and Defendant Ortiz was very aware of this fact;

B. Requiring medical attention on April 23, 2024 without somehow foreseeing (and thereby communicating earlier) that she would require two days off to recover from her resulting surgery; and,

C. Needing additional time to recover from her surgery, pursuant to her doctor's note on April 25, 2024.

56. On May 30, 2024, Ms. Brown received her annual appraisal (AKA "Beazley Interim Appraisal Pack"), upon which – on information and belief – her earlier bonus was based. The report acknowledged Ms. Brown's openness to criticism and drive to grow, praised her effort to continually improve her internal communication skills, and stated that the only training she might benefit from was on "Body Language and Non Verbal Communication." This report contained a mix of Ms. Lawler's evaluation of Ms. Brown and Defendant Ortiz'.

57. But on June 3, 2024, Defendant Ortiz placed Ms. Brown on a Performance Improvement Plan ("**PIP**"), listing numerous areas in which she must improve *in 30 days* or she would be terminated. This included communication with stakeholders, the thing Beazley said it would train her on – but apparently reneged on.

58. On June 7, 2024 (66 days after it was mailed), Beazley's attorneys finally responded to Ms. Brown's employee file inspection request and produced copies of her personnel file only. Beazley refused to produce Ms. Brown's pay stubs and her time-entry records.

59. Devastated by Defendants' unrelenting attacks while she tried to recover from her injuries (while performing her job well), Ms. Brown was again placed on leave by her therapist from June 17 through July 11, 2024 to alleviate her emotional distress.

60. So, on July 1, 2024, Lindsey Campos emailed Ms. Brown stating that she could not use FMLA leave to cover this disability, and so they needed "to discuss a different type of leave option to cover your period of absence from today through July 11, 2024." Ms. Brown replied the next day reminding Ms. Campos that she has provided doctors' notes to HR and she would discuss whatever Ms. Campos required. Ms. Campos answered by asking for a telephone conversation with her and a "third-party observer" by video or phone on Friday, July 5, 2024, but this made Ms. Brown uncomfortable and she therefore asked that any such communication be done by email. This was

eminently reasonable given that Ms. Brown was on leave for emotional distress, and so she (1) should not be working and (2) did not want to be placed in a hostile situation that undermined the very purpose of her present leave. Therefore, Ms. Brown corrected several factual inaccuracies in Ms. Campos' email and expressed her view on the entire situation:

> This has caused a great deal of stress and I am now extremely anxious to even take any time off while at this company, because each time something new is brought up surrounding me being off. I am now extremely uncomfortable and feel very unsupported and probably in a worse head space than the week prior to last … [your] email is essentially telling me that I'm still wrong even though I've done everything you or [Defendant Ortiz] have asked me to do in verbal communication with me. I am now walking on eggshells at work due to the fact that each and everyday you guys are going to try to find something and anything to defame my character just because I have health issues and my doctors feel the need to place me off [work]. Again, I am happy to provide you with what you need form me. I hope you are doing well and I hope you have a good day.

61. On July 22, 2024, Ms. Campos followed up with Ms. Brown, stating that she was attaching a medical accommodation form that her doctor must fill out and return to Ms. Campos by August 7, 2024. Ms. Campos claimed this was so that she and Beazley could "evaluate whether your request for leave is reasonable and/or whether it creates an undue hardship on the company", *an entity valued at approximately $4.88 billion*. Ms. Campos further claimed that Ms. Brown was not eligible for protected leave under either Family Medical Leave Act ("**FMLA**") or California Family Rights Act ("**CFRA**"), but she acknowledged other protections likely exist under, for example, the Americans with Disabilities Act and California's Fair Employment and Housing Act ("**FEHA**).

62. Ms. Brown returned to work on July 25, 2024, as scheduled. However, Beazley – through Defendant Ortiz and Ms. Campos – promptly informed Ms. Brown that she had failed her PIP in the meantime. And so, on August 9, 2024, Ms. Campos emailed Ms. Brown stating that her "employment with Beazley is terminated effective immediately." Yet Beazley had never engaged Ms. Brown in the interactive accommodation process, let alone provided her with any accommodations for her ongoing disabilities, or corrected the various workplace misconduct that she had complained of. Ms. Campos further claimed that Ms. Brown did "not have benefits with the company," which was

false, and so "COBRA information will not be mailed to you." Therefore, Beazley denied Ms. Brown her access to continued healthcare through the end of the month (*i.e.*, until August 31, 2024), as required by the Continuation of Health Coverage Act ("**COBRA**").

**DAMAGES, FEES, COSTS, AND ADMINISTRATIVE REMEDIES**

63. **Plaintiff's Economic Damages:** As a consequence of Defendants' conduct, Plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to her career, medical and related expenses, and interest thereon, in a sum to be proven at trial.

64. **Plaintiff's Non-Economic Damages:** As a consequence of Defendants' conduct, Plaintiff has suffered, and will continue to suffer, extraordinary psychological and emotional distress, humiliation, and mental and physical injury, pain, and anguish in a sum to be proven at trial.

65. **Punitive Damages:** Defendants' conduct herein constitutes oppression and/or malice entitling Plaintiff to an award of exemplary/punitive damages. (Civ. Code § 3294.)

A. *Malice*: Defendants' conduct was committed with malice within the meaning of California Civil Code § 3294, including the following: (1) Defendants acted with intent to cause Plaintiff emotional, physical, and financial injury, and/or acted with reckless disregard toward Plaintiff's injuries; (2) Defendants took multiple adverse employment actions against Plaintiff because of her sex, disabilities, and/or legal utilization of California leave laws; and (3) Defendants' conduct was despicable and committed with willful and conscious disregard for Plaintiff's rights, health, and safety, including Plaintiff's right to workplace accommodations and to be free of discrimination, harassment, retaliation, and wrongful termination.

B. *Oppression*: Additionally, or alternatively, Defendants' conduct, described herein, was committed with oppression within the meaning of California Civil Code § 3294. This includes Defendants' actions against Plaintiff, taken because of Plaintiff's sex, disabilities, and good faith efforts to secure her legal entitlement to pregnancy and disability-related leave. Defendants' conduct subjected Plaintiff to cruel and unjust hardship not only through their direct actions, but by purposefully disregarding Plaintiff's right to disability accommodations and a workplace free of discrimination, harassment, and retaliation. As a direct result, Plaintiff has suffered extreme emotional distress as described in this Complaint.

66. **Attorneys' Fees and Costs:** Plaintiff has incurred and continues to incur legal expenses and attorneys' fees as a result of Defendants' conduct. (*E.g.*, Code of Civ. Proc. § 1021.5, Lab. Code §§ 233(e) and 1994, Gov. Code § 12965(b), and other analogous statutory authorities.)

67. **Exhaustion of Administrative Remedies.**

A. **LWDA Notice.** On August 30, 2024, and within the statute of limitations period afforded by law, Plaintiff e-filed her Private Attorneys General Act ("**PAGA**") notice with California's Labor and Workforce Development Agency ("**LWDA**"). (Lab. Code § 2699.3(a)(2).) The same day, Ms. Brown sent, via certified mail, a copy of this notice to Beazley at its address listed on Ms. Brown's most-current pay stubs provided by Beazley in response to Plaintiff's pre-dispute inspection request. (Lab. Code § 226(c).) 65 days have passed from this date without Ms. Brown receiving word from the agency about the same, and so Ms. Brown has exhausted her administrative agencies with regard to her PAGA claims.

B. **Right-to-Sue.** Plaintiff exhausted her administrative remedies for her FEHA claims herein on October 2, 2024, and within the statute of limitations period afforded by law, by filing such charges herein with the California Civil Rights Department ("**CRD**", formerly the Department of Fair Employment and Housing ("**DFEH**")). The CRD issued Plaintiff her Right to Sue Letter the same day. Attached to this Complaint, as **Exhibit A**, is a true and accurate copy of Plaintiff's Right to Sue Letter.

## FIRST CAUSE OF ACTION

**Discrimination Based on Gender and Disabilities**

**(Gov. Code §§ 12940, *et seq.*)**

**(By Plaintiff Against Beazley and DOES 1-50)**

68. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

69. At all times relevant to this action, Beazley employed Plaintiff and the other employees directly and indirectly described herein.

70. The Fair Employment and Housing Act ("**FEHA**") (Gov. Code §§ 12940, *et seq.*) and California Constitution (Art. I, §§ 7-8) make it unlawful to discriminate or harass an individual on the

basis of their gender and related characteristics, like pregnancy or parenthood. At all times referenced in this Complaint these laws were in full force and effect and was binding on Beazley and DOES 1-50. (*E.g.*, Gov. Code §§ 12940(a) and (j)(4)(C), and 12945.)

71. FEHA, in particular, prohibited Beazley from discriminating against Plaintiff (*i.e.*, taking any manner of adverse employment action) substantially because of her gender. "Adverse employment actions" may include, but are not limited to: (1) termination; (2) demotion; (3) harassment; (4) being placed on administrative leave; (5) refusing promotion; (6) unjustifiably bad performance evaluations; (7) unfavorable job reassignments or tasks; (8) reducing working hours; (9) rescinding promised training; and (10) any conduct that is reasonably likely to impair one's job performance or their prospects for advancement or promotion (*e.g.*, falsely claiming insubordination). (*See*, *e.g.*, *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1053-1061; *Lopez v. La Casa De Las Madres* (2023) 89 Cal.App.5th 365, 382 [terminating an employee because they used their maximum statutory leave may still be an adverse employment action where additional leave under FEHA is available], citing Gov. Code § 12945; *see also* Cal. Code of Regs., tit. 2, § 11040 [same].)

72. Beazley and its employees, including Defendants Ortiz and Han, were at all times relevant to this action, aware of FEHA's requirements because California required them to take training on how to recognize and prevent discrimination, harassment, and retaliation in the workplace. (Gov. Code §§ 12950-12950.1.) In other words, Defendants knew not to discriminate, harass, or retaliate against Ms. Brown on the basis of any of her protected characteristics (*e.g.*, gender and/or disabilities).

73. Beazley discriminated against Ms. Brown substantially because of her gender and her disabilities by subjecting her to adverse employment actions, which included but were not limited to: (1) treating Ms. Brown less favorably than similarly situated male and "abled" employees by denying her comparable bonuses, wages, opportunities for advancement, and workplace accommodations; and (2) terminating her substantially because she had become pregnant and sustained injuries as a result, which required further medical care.

74. Plaintiff is informed and believes, and thereon alleges, that in addition to the practices above, Beazley have engaged in other discriminatory practices against her which are not yet fully

known. At such time as said discriminatory practices become known, Plaintiff may seek leave from this Court to amend her Complaint.

75. Defendants Ortiz and Han, and Beazley's other employees, engaged in the unlawful conduct alleged herein while serving as Beazley's officers, directors, supervisors, and/or agents while acting – at all times – within the scope and course of their employment. (*e.g.*, Gov. Code § 12926.) Beazley, at all times relevant to this action, directed or ratified the conduct of Defendant Ortiz and its other employees as set forth herein. Beazley is, therefore, strictly liable for the conduct of its supervisory employees under FEHA (*e.g.*, Defendant Ortiz), and separately its non-supervisory employees under the doctrine of *respondeat superior*.

76. As a direct and proximate result of the actions taken by Beazley, by and through their agents (*e.g.*, Defendants Ortiz and Han), the Beazley has caused Plaintiff to suffer special damages including, but not limited to, loss of past and future income, benefits, medical expenses, and other damages to be proven at trial.

77. As a direct and proximate result of the actions taken by Beazley, by and through itself and/or its officers, directors, shareholders/members, supervisors, and/or agents, Beazley caused Plaintiff to suffer general damages including, but not limited to, shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress, shame, and other damages to be proven at the time of trial.

78. Because Beazley and its employees/agents had the anti-harassment, discrimination, and retaliation training referenced above, their conduct toward Plaintiff, explained herein, could be nothing other than willful, malicious, and oppressive. In other words, Beazley (directly and by and through its employees) knew better, but still took the despicable actions herein knowing they would harm Plaintiff physically, emotionally, and/or financially. Beazley did nothing to stop this conduct while either directing or ratifying it. Plaintiff is therefore entitled to punitive damages against Beazley for its conduct, and that of its employees, as described herein.

79. Plaintiff has incurred, and continues to incur, legal expenses and attorneys' fees related to this cause of action in sums to be determined at trial.

**SECOND CAUSE OF ACTION**

**Failure to Engage in the Interactive Accommodation Process**

**(Gov. Code §§ 12940, *et seq*.)**

**(By Plaintiff Against Beazley and DOES 1-50)**

80. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

81. At all times relevant to this action, Beazley employed Plaintiff and the other employees directly and indirectly described herein.

82. The FEHA requires employers to engage their employees with physical or mental disabilities in "a timely, good faith, interactive process" to determine if any accommodations will allow the employee to perform the essential functions of their jobs. (Gov. Code § 12940(m)-(n).) Such accommodations may include, for example, additional leave – even where all other statutory leave has been exhausted – so the employee can recover from their disabilities and return to work. (Gov. Code §§ 12940, 12945; *Sanchez v. Swissport, Inc.* (2013) 213 Cal.App.4th 1331, 1338-1341.)

83. The employer must begin the interactive accommodation process when the employee requests an accommodation or when the employer knows, or should have known, about the employee's disability-related limitations. (*Lin v. Kaiser Foundation Hospitals* (2023) 88 Cal.App.5th 712, 728; *Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1252; *see also* Cal. Code of Regs., tit. 2, § 11069.) The employer must also keep communicating with the employee in good faith to assess the nature of the employee's disabilities and the accommodations that might aid them in returning to work or in performing the essential functions of their jobs. (*Scotch v. Art Institute of California-Orange County, Inc.* (2009) 173 Cal.App.4th 986, 1013-1014.) If an employer is responsible for the breakdown in communication, then they are liable for failing to engage in the interactive accommodation process in good faith. (*Ibid.*)

84. Here, Beazley knew that Ms. Brown was pregnant, that she gave birth, and that she had pregnancy-related disabilities such that she required periodic medical attention after she returned to work. Beazley knew this because Ms. Brown, her doctor, and (on information and belief) the EDD told them so. Ms. Brown also promptly notified Defendant Ortiz – and thus Beazley – that she required

surgery to remove various cysts from her breasts around April 2024. Instead of responding with the interactive accommodation process, Defendant Ortiz – with the help of Beazley's HR team – issued Ms. Brown a written warning for the incident and then terminated her. This served as the basis (in whole or in substantial part) for Beazley and Defendant Ortiz placing Ms. Brown on a Performance Improvement Plan. The problem is underscored by the fact that Ms. Brown had recently filed an internal discrimination complaint against Defendant Ortiz, and Defendant Ortiz got to decide whether Ms. Brown had completed the tasks in her PIP or not. Defendant Ortiz ultimately, and wrongly, concluded that Ms. Brown had failed to do so and – therefore – terminated her.

85. Defendant Ortiz and Beazley's HR team engaged in the unlawful conduct alleged herein while serving as Beazley's officers, directors, supervisors, and/or managing agents while acting – at all times – within the scope and course of their employment. (Gov. Code §12926.) Beazley also, at all times relevant to this action, directed or ratified the conduct of its non-supervisory employees set forth herein. Beazley is therefore strictly liable for the conduct of Defendant Ortiz and DOES 1-50 under FEHA, and separately for its non-supervisory employees under the doctrine of *respondeat superior*.

86. As a direct and proximate result of the actions taken by Beazley, by and through its employees and agents, it has caused Plaintiff to suffer special damages including, but not limited to, loss of past and future income, benefits, medical expenses, and other damages to be proven at trial.

87. As a direct and proximate result of the actions taken by Beazley, by and through its employees and agents, it has caused Plaintiff to suffer general damages including, but not limited to, shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress, and other damages to be proven at the time of trial.

88. Beazley's conduct was malicious and oppressive because it terminated her while she was on protected disability leave in order to prevent her from receiving the medical care that she required in order to return to work. This resulted in Ms. Brown losing much of her medical coverage for her and her newborn children *and* putting her in fear of how she might provide for her family. Defendants' conduct was willful and malicious because they knew what they were doing was wrong due to their receipt of anti-discrimination, harassment, and retaliation training. Furthermore, Beazley

knew or should have known that their conduct would cause Plaintiff additional and actual injury, both physical and emotional, but it took this action (or ratified it) anyway. Beazley's conduct has, as explained herein, actually caused Plaintiff these emotional injuries. Plaintiff is therefore entitled to punitive damages against Beazley for its malicious and oppressive conduct.

89. Plaintiff has incurred, and continues to incur, legal expenses and attorneys' fees related to this cause of action in sums to be determined at trial.

## THIRD CAUSE OF ACTION

**Failure to Accommodate Disability**

**(Gov. Code §§ 12940, *et seq*.)**

**(By Plaintiff Against Beazley and DOES 1-50)**

90. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

91. At all times relevant to this action, Beazley employed Plaintiff and the other employees directly and indirectly described herein.

92. California Government Code § 12940(m) makes it illegal for "an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee." (*See also* Gov. Code § 12926.)

93. At all times relevant to this cause of action, Ms. Brown was on protected pregnancy and disability leave, and she requested various accommodations including additional leave so that she could recover from her related disabilities and then return to work. Not only would granting these accommodations have cost Beazley very little (if anything), they were legally obligated to provide these accommodations. However, Beazley refused to do so. Beazley also failed to timely initiate the interactive accommodation process with Ms. Brown upon learning that she was fainting from overwork while pregnant and recovering from various surgeries. Instead, Beazley punished Ms. Brown through various written warnings, a PIP, and ultimately by terminating her.

94. Defendant Ortiz and Beazley's HR team engaged in the unlawful conduct alleged herein while serving as Beazley's officers, directors, supervisors, and/or managing agents while acting – at all times – within the scope and course of their employment. (Gov. Code § 12926.) Beazley also,

at all times relevant to this action, directed or ratified the conduct of its non-supervisory employees set forth herein. Beazley is therefore strictly liable for the conduct of Defendant Ortiz and DOES 1-50 under FEHA, and separately for its non-supervisory employees under the doctrine of *respondeat superior*.

95. As a direct and proximate result of the actions taken by Beazley, by and through its employees and agents, it has caused Plaintiff to suffer special damages including, but not limited to, loss of past and future income, benefits, medical expenses, and other damages to be proven at trial.

96. As a direct and proximate result of the actions taken by Beazley, by and through its employees and agents, it has caused Plaintiff to suffer general damages including, but not limited to, shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress, and other damages to be proven at the time of trial.

97. Beazley's conduct was malicious and oppressive because it terminated her while she was on protected disability leave in order to prevent her from receiving the medical care that she required in order to return to work. This resulted in Ms. Brown losing much of her medical coverage for her and her newborn children *and* putting her in fear of how she might provide for her family. Defendants' conduct was willful and malicious because they knew what they were doing was wrong due to their receipt of anti-discrimination, harassment, and retaliation training. Furthermore, Beazley knew or should have known that their conduct would cause Plaintiff additional and actual injury, both physical and emotional, but it took this action (or ratified it) anyway. Beazley's conduct has, as explained herein, actually caused Plaintiff these emotional injuries. Plaintiff is therefore entitled to punitive damages against Beazley for its malicious and oppressive conduct.

98. Plaintiff has incurred, and continues to incur, legal expenses and attorneys' fees related to this cause of action in sums to be determined at trial.

///

///

**<u>FOURTH CAUSE OF ACTION</u>**

**Whistleblower Retaliation**

**(Lab. Code §§ 98.6, 233, and 1102.5)**

**(By Plaintiff Against Beazley and DOES 1-50)**

99. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

100. At all times relevant to this action, Beazley employed Plaintiff and the other employees directly and indirectly described herein.

101. Labor Code § 233(c) makes it unlawful for employers to "deny an employee the right to use sick leave or discharge, threaten to discharge, demote, suspend, or in any manner discriminate against an employee for using, or attempting to exercise the right to use, sick leave to attend to an illness or the preventive care of a family member, or for any other reason specified in subdivision (a) of § 246.5." Labor Code § 246.5(a)(1) allows use of sick leave for "[d]iagnosis, care, or treatment of an existing health condition …"

102. Labor Code § 1102.5, more broadly, makes it unlawful for any "employer, or any person acting on behalf of the employer" to retaliate against any employee for disclosing information "to a person with authority over the employee … if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." Employers and their agents also "shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." (*Id.* at Subd. (c).) This statute is breached even if the employer already knew about the violation. (*People ex rel. Garcia-Brower v. Kolla's, Inc.* ("***Garcia-Brower***") (2023) 14 Cal.5th 719, 721, 730 [merely approaching "an employer about workplace safety hazards, unpaid wages, or overtime violations" qualifies as protected activity].)

103. Labor Code § 98.6(a), in relevant part, prohibits any *person* from taking any manner of adverse employment action against an employee or applicant because they "engaged in any conduct

delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2," "made a written or oral complaint that they are owed unpaid wages," "or because of the exercise by the employee or applicant for employment on behalf of themselves or others ***of any rights afforded them***." "By its terms, section 98.6 incorporates violations of other sections of the Labor Code, including section 1102.5." (*Garcia-Brower*, *supra*,14 Cal.5th at pp. 731-732.) "An employer who willfully refuses to hire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for rehiring or promotion by a grievance procedure, arbitration, or hearing authorized by law, is guilty of a misdemeanor." (Lab. Code § 98.6(b)(2).) "In addition to other remedies available, an employer who violates this section is liable for a civil penalty not exceeding ten thousand dollars ($10,000) per employee for each violation of this section, to be awarded to the employee or employees who suffered the violation." (*Id*. at Subd. (b)(3).)

104. Furthermore, on January 1, 2024, California passed Senate Bill 497, which amended (in relevant part) Labor Code §§ 98.6 and 1102.5 to "create a rebuttable presumption in favor of the employee's claim if an employer engages in any action prohibited by this provision within 90 days of the protected activity specified in this provision." (Cal. Sen. Bill No. 497 (2022-2023 Reg. Sess.) as approved Oct. 8, 2023; *see also* Lab. Code § 98.6(b)(1).)

105. The laws above were in full effect at all times relevant to this action and were applicable to Defendants. This includes Defendant Ortiz and Han, and Beazley's HR team who had authority over Plaintiff to "investigate, discover, or correct the violation or noncompliance …" (Lab. Code. § 1102.5(a).)

106. Here, Plaintiff sought to take paid sick leave on various days to care for herself or her infant children. However, Defendant Ortiz and Beazley repeatedly disciplined her for doing so by giving her written warnings, telling her that she might be terminated, placing her on a PIP, and – ultimately, firing her. Each of these instances violated Labor Code § 233.

107. In addition to the aforementioned issue, Defendants separately attacked Plaintiff because she: (1) became pregnant, (2) required pregnancy leave, (3) needed to take her legally mandated breaks while pregnant in order to avoid harm to herself and her unborn children, (4) sought

leave to have, and to recover from, surgery to remove various cysts from her body; (5) reported Defendant Ortiz for discrimination; and (6) sought copies of her personnel file, payroll and time-entry records, etc. (Lab. Code §§ 226, 247.5, 432, and 1198.5) from Beazley through her attorneys.

108. Plaintiff's protected activity, described herein, was a substantial motivating reason for Defendants' (and Beazley's other employees') adverse employment actions against Plaintiff, which included, but were not limited to: (1) actively undermining Plaintiff at work in hope of generating false pretense to terminate her; (2) telling Plaintiff's coworkers that she was a problem, and should exclude her from social activities – or be mean to her – because she got pregnant and required leave. These actions realistically damaged Plaintiff's likelihood of receiving bonuses and promotions; (3) telling Plaintiff that she was not allowed to take her legally mandated meal and rest breaks to the point that Plaintiff literally passed out from exhaustion and lack of nourishment. On information and belief, this also resulted in various problems with Plaintiff's children, including them being significantly underweight at birth; (4) Defendant Ortiz belittling Plaintiff in front of her peers because she had been out on pregnancy leave; (5) Defendant Ortiz and Beazley's HR managers issuing Plaintiff written warnings for requiring surgery and, thus, additional leave to recover therefrom; (6) maliciously placing Ms. Brown on a PIP; (7) giving Defendant Ortiz the power to decide Plaintiff's fate, via a PIP, immediately after she reported him for discrimination; and (8) Defendant Ortiz – with Beazley's approval – opting to terminate Plaintiff substantially because she reported him, requested leave, was disabled, and resisted other forms of discrimination, harassment, and retaliation set forth herein.

109. Defendants and/or Bealzey's other employees engaged in the unlawful conduct alleged herein while serving as Beazley's within the scope and course of their employment. Beazley also, at all times relevant to this action, directed or ratified the conduct of its non-supervisory employees set forth herein. Beazley is therefore liable for the conduct of Defendants Ortiz and Han, along with its other employees, under Labor Code §§ 98.6, 223, and 1102.5.

110. As a direct and proximate result of the actions taken by Defendants and Beazley's other employees, Beazley has caused Plaintiff to suffer special damages including, but not limited to, loss of past and future income, benefits, medical expenses, and other damages to be proven at trial.

111. As a direct and proximate result of the actions taken by Beazley, by and through its employees and agents (*e.g.*, Defendants Ortiz and Han, and many more), it has caused Plaintiff to suffer general damages including, but not limited to, shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress, and other damages to be proven at the time of trial.

112. As a direct and proximate result of the actions taken by Defendants and Beazley's other employees, Beazley is also liable to Plaintiff for $10,000 per retaliatory act pursuant to Labor Code § 98.6(b)(3).

113. Beazley's conduct was malicious and oppressive because it terminated her for seeking necessary medical attention, passing out from overwork while pregnant, and seeking relief from Defendant Ortiz' misconduct above. This resulted in Ms. Brown losing much of her medical coverage for her and her newborn children *and* putting her in fear of how she might provide for her family. Defendants' conduct was willful and malicious because they knew what they were doing was wrong due to their receipt of anti-discrimination, harassment, and retaliation training. Furthermore, Beazley knew or should have known that their conduct would cause Plaintiff additional and actual injury, both physical and emotional, but it took this action (or ratified it) anyway. Beazley's conduct has, as explained herein, actually caused Plaintiff these emotional injuries. Plaintiff is therefore entitled to punitive damages against Beazley for its malicious and oppressive conduct.

114. Plaintiff has incurred, and continues to incur, legal expenses and attorneys' fees related to this cause of action in sums to be determined at trial.

## **FIFTH CAUSE OF ACTION**

**Retaliation for Engaging in Protected Activity in Violation of FEHA**

**(Gov. Code § 12940(h) and (m)(2))**

**(By Plaintiff Against All Defendants)**

115. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

116. At all times herein mentioned, FEHA was in full force and effect and was binding on Defendants. This law forbids any employer from retaliating "against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint,

testified, or assisted in any proceeding under" FEHA. (Gov. Code § 12940(h); *see also Id*. at § 12926.) Government Code § 12940(m)(2) also makes it illegal for "an employer or other entity covered by this part to … retaliate or otherwise discriminate against a person for requesting accommodation under this subdivision, regardless of whether the request was granted." As above, Defendants were aware of FEHA's application pursuant to the training they received prior to taking the action described herein.

117. Plaintiff engaged in multiple actions protected by FEHA, as described herein. These include, *but are not limited to*: (1) taking pregnancy leave; (2) seeking reasonable accommodations; (3) requesting additional leave to which she was legally entitled to have surgery and to recover therefrom; (4) complaining about Defendant Ortiz' ongoing discrimination, harassment, and/or retaliation; and (5) asking Beazley to comply with its legal obligations under these laws.

118. In response to Plaintiff's complaints to Ms. Lawler about working shifts longer than 11 hours without any rest and passing out at work, Ms. Lawler stated she would look into it. Ms. Lawler reported the conduct of Ms. Brown's coworkers as "unacceptable;" in other words, Ms. Lawler stood up against the violations of FEHA for the extraordinary hours Plaintiff was forced to work. On information and belief, Defendant Han rallied other employees against Ms. Lawler which led to Ms. Lawler's transfer to another team where she could no longer defend Ms. Brown. Beazley and its employees, including Defendants Ortiz and Han, were at all times relevant to this action, aware of FEHA's requirements because California required them to take training on how to recognize and prevent discrimination, harassment, and retaliation in the workplace. (Gov. Code §§ 12950-12950.1.) In other words, Defendants knew not to discriminate, harass, or retaliate against Ms. Brown on the basis of any of her protected characteristics (*e.g.*, gender and/or disabilities).

119. From the beginning of Plaintiff's employment, it was Defendant Han (Plaintiff's senior co-worker) who told Plaintiff not to log off or step away from her computer because of working needing to be done. On information and belief, Defendant Han was critical of Plaintiff for becoming pregnant, and was part of other co-workers who were also critical of Plaintiff becoming pregnant, labeling it as "irresponsible." Defendant Han and other co-workers told Plaintiff that passing out was her own fault. Defendant Han led the charge for Beazley to terminate Plaintiff while setting Plaintiff up for failure. On or about Friday, December 16, 2022, Ms. Brown worked well over nine hours, again

without breaks. Defendant Han then tasked Ms. Brown with a rush job because Plaintiff was still online and the rest of her team had conveniently logged off. All of Defendant Han's actions described were in the course and scope of her employment. Defendant Han's actions were in violation of FEHA because labeling her pregnancy as "irresponsible," blaming her for passing out, forcing her to work overtime, not allowing her time away from her computer and/or phone, were retaliation for Plaintiff's need for pregnancy leave, reasonable accommodations, leave to recover, and seeking to use her accrued PTO and sick leave. These same actions were also discriminatory against Plaintiff for being a pregnant woman.

120. Defendant Ortiz and Bealzey's HR team engaged in the unlawful conduct alleged herein while serving as Beazley's officers, directors, supervisors, and/or managing agents while acting – at all times – within the scope and course of their employment. (Gov. Code § 12926.) Beazley also, at all times relevant to this action, directed or ratified the conduct of its non-supervisory employees set forth herein. Beazley is therefore strictly liable for the conduct of Defendant Ortiz under FEHA, and separately for its non-supervisory employees under the doctrine of *respondeat superior*.

121. As a direct and proximate result of the actions taken by Beazley, by and through its employees and agents, it has caused Plaintiff to suffer special damages including, but not limited to, loss of past and future income, benefits, medical expenses, and other damages to be proven at trial.

122. As a direct and proximate result of the actions taken by Beazley, by and through its employees and agents, it has caused Plaintiff to suffer general damages including, but not limited to, shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress, and other damages to be proven at the time of trial.

123. Beazley's conduct was malicious and oppressive because it terminated her for seeking necessary medical attention, passing out from overwork while pregnant, and seeking relief from Defendant Ortiz' misconduct above. This resulted in Ms. Brown losing much of her medical coverage for her and her newborn children *and* putting her in fear of how she might provide for her family. Defendants' conduct was willful and malicious because they knew what they were doing was wrong due to their receipt of anti-discrimination, harassment, and retaliation training. Furthermore, Beazley knew or should have known that their conduct would cause Plaintiff additional and actual injury, both

physical and emotional, but it took this action (or ratified it) anyway. Beazley's conduct has, as explained herein, actually caused Plaintiff these emotional injuries. Plaintiff is therefore entitled to punitive damages against Beazley for its malicious and oppressive conduct.

124. Plaintiff has incurred, and continues to incur, legal expenses and attorneys' fees related to this cause of action in sums to be determined at trial.

**<u>SIXTH CAUSE OF ACTION</u>**

**Failure to Prevent Discrimination, Harassment, and Retaliation in Violation of FEHA**

**(Gov. Code §§ 12940, *et seq*.)**

**(By Plaintiff Against Beazley and DOES 1-50)**

125. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

126. At all times relevant to this action, Beazley employed Plaintiff and the other employees directly and indirectly described herein.

127. Government Code § 12940(k) makes it an unlawful employment practice for an employer to "fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (*Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.* (2002) 103 Cal.App.4th 1021, 1035 ["The employer's duty to prevent harassment and discrimination is affirmative and mandatory"]; *Trujillo v. NorthCounty Transit Dist.* (1998) 63 Cal.App.4th 280, 286 ["This § creates a tort that is made actionable by statute"]; *Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1240 ["… we conclude that retaliation is a form of discrimination actionable under [Gov. Code] § 12940, subdivision (k)"].)

128. Defendants, and each of them, violated this provision by, as set forth throughout this Complaint: (1) ignoring Plaintiff's discrimination, harassment, and retaliation on the basis of her sex and/or disabilities; (2) retaliating against Plaintiff for reporting and for resisting the same and/or attempting to exercise her rights; (3) failing to supervise and properly train Defendants Ortiz and Han along with Beazley's other employees engaging in the conduct herein, thereby allowing it to occur *and* recur; (4) failing to enforce Beazley's anti-discrimination, anti-harassment, and anti-retaliation

policies and procedures; and/or (5) failing to appropriately investigate and/or take appropriate action to correct Defendants' various acts of discrimination, harassment, and retaliation as set forth herein.

129. Defendant Ortiz and Bealzey's HR team engaged in the unlawful conduct alleged herein while serving as Beazley's officers, directors, supervisors, and/or managing agents while acting – at all times – within the scope and course of their employment. (Gov. Code § 12926.) Beazley also, at all times relevant to this action, directed or ratified the conduct of its non-supervisory employees set forth herein. Beazley is therefore strictly liable for the conduct of Defendant Ortiz under FEHA, and separately for its non-supervisory employees under the doctrine of *respondeat superior*.

130. As a direct and proximate result of the actions taken by Beazley, by and through its employees and agents, it has caused Plaintiff to suffer special damages including, but not limited to, loss of past and future income, benefits, medical expenses, and other damages to be proven at trial.

131. As a direct and proximate result of the actions taken by Beazley, by and through its employees and agents, it has caused Plaintiff to suffer general damages including, but not limited to, shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress, and other damages to be proven at the time of trial.

132. Beazley's conduct was malicious and oppressive because it terminated her for seeking necessary medical attention, passing out from overwork while pregnant, and seeking relief from Defendant Ortiz' misconduct above. This resulted in Ms. Brown losing much of her medical coverage for her and her newborn child *and* putting her in fear of how she might provide for her family. Defendants' conduct was willful and malicious because they knew what they were doing was wrong due to their receipt of anti-discrimination, harassment, and retaliation training. Furthermore, Beazley knew or should have known that their conduct would cause Plaintiff additional and actual injury, both physical and emotional, but it took this action (or ratified it) anyway. Beazley's conduct has, as explained herein, actually caused Plaintiff these emotional injuries. Plaintiff is therefore entitled to punitive damages against Beazley for its malicious and oppressive conduct.

133. Plaintiff has incurred, and continues to incur, legal expenses and attorneys' fees related to this cause of action in sums to be determined at trial.

///

**SEVENTH CAUSE OF ACTION**

**Negligent Hiring, Supervision, and/or Retention**

**(*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038)**

**(By Plaintiff Against all Beazley and DOES 1-50)**

134. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

135. At all times relevant to this action, Beazley employed Plaintiff and the other employees directly and indirectly described herein.

136. Beazley owed Plaintiff a duty of care in appointing, hiring, retaining, and supervising persons who would not engage in discriminatory, harassing, or retaliatory conduct, or other illegal activity. (*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038, 1053-1055.)

137. Beazley knew, or should have known, of their employees' propensity to engage in the misconduct described herein (*e.g.*, Defendant Ortiz and DOES 1-50), but it hired them anyway. Beazley also knew, or should have known of the same individuals' actual misconduct herein, but failed to prevent it. Furthermore, Beazley did not punish (*e.g.*, terminate) the same individuals once it learned of their misconduct.

138. Beazley therefore breached their duty of care to Plaintiff with regard to hiring, failing to properly supervise, and retaining Defendant Ortiz and DOES 1-50, as set forth herein.

139. Defendant Ortiz, and DOES 1-50, engaged in the unlawful conduct alleged herein while serving as Beazley's officers, directors, supervisors, and/or managing agents while acting – at all times – within the scope and course of their employment. (Gov. Code § 12926.) Beazley also, at all times relevant to this action, directed or ratified the conduct of its non-supervisory employees set forth herein. Beazley is therefore strictly liable for the conduct of Defendant Ortiz and DOES 1-50 under FEHA, and separately for its non-supervisory employees under the doctrine of *respondeat superior*.

140. As a direct and proximate result of the actions taken by Beazley, by and through its employees and agents, it has caused Plaintiff to suffer special damages including, but not limited to, loss of past and future income, benefits, medical expenses, and other damages to be proven at trial.

141. As a direct and proximate result of the actions taken by Beazley, by and through its employees and agents, it has caused Plaintiff to suffer general damages including, but not limited to, shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress, and other damages to be proven at the time of trial.

142. Beazley's conduct was malicious and oppressive because it terminated her for seeking necessary medical attention, passing out from overwork while pregnant, and seeking relief from Defendant Ortiz' misconduct above. This resulted in Ms. Brown losing much of her medical coverage for her and her newborn children *and* putting her in fear of how she might provide for her family. Defendants' conduct was willful and malicious because they knew what they were doing was wrong due to their receipt of anti-discrimination, harassment, and retaliation training. Furthermore, Beazley knew or should have known that their conduct would cause Plaintiff additional and actual injury, both physical and emotional, but it took this action (or ratified it) anyway. Beazley's conduct has, as explained herein, actually caused Plaintiff these emotional injuries. Plaintiff is therefore entitled to punitive damages against Beazley for its malicious and oppressive conduct.

143. Plaintiff has incurred, and continues to incur, legal expenses and attorneys' fees related to this cause of action in sums to be determined at trial.

## EIGHTH CAUSE OF ACTION

**Wrongful Termination**

**(Gov. Code §§ 12940, *et seq*., and Public Policy)**

**(By Plaintiff Against Beazley and DOES 1-50)**

144. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

145. At all times relevant to this action, Beazley employed Plaintiff and the other employees directly and indirectly described herein.

146. "[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action [of wrongful or constructive discharge] and recover damages traditionally available in such actions." (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170.) "[T]he cases in which violations of public policy are found generally

fall into four categories: (1) refusing to violate a statute; (2) performing a statutory obligation (3) exercising a statutory right or privilege; and (4) reporting an alleged violation of a statute of public importance." (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1090-1091.)

147. As described herein, Beazley, by itself and by and through DOES 1-50 and its employees and agents working in the scope of their duties (*e.g.*, Defendants Ortiz and Han, and Beazley's HR team) wrongfully terminated Ms. Brown's employment. Defendants took this action to in response to Ms. Brown requesting accommodations for her disabilities and otherwise trying to assert her legal rights to protected disability leave.

148. As a direct and proximate result of the actions taken by Beazley, by and through its employees and agents (*e.g.*, Defendants Ortiz and Han, and Beazley's HR team), Beazley has caused Plaintiff to suffer special damages including, but not limited to, loss of past and future income, benefits, medical expenses, and other damages to be proven at trial.

149. As a direct and proximate result of the actions taken by Beazley, by and through its employees and agents, it has caused Plaintiff to suffer special damages including, but not limited to, loss of past and future income, benefits, medical expenses, and other damages to be proven at trial.

150. As a direct and proximate result of the actions taken by Beazley, by and through its employees and agents, it has caused Plaintiff to suffer general damages including, but not limited to, shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress, and other damages to be proven at the time of trial.

151. Beazley's conduct was malicious and oppressive because it terminated her for seeking necessary medical attention, passing out from overwork while pregnant, and seeking relief from Defendant Ortiz' misconduct above. This resulted in Ms. Brown losing much of her medical coverage for her and her newborn child *and* putting her in fear of how she might provide for her family. Defendants' conduct was willful and malicious because they knew what they were doing was wrong due to their receipt of anti-discrimination, harassment, and retaliation training. Furthermore, Beazley knew or should have known that their conduct would cause Plaintiff additional and actual injury, both physical and emotional, but it took this action (or ratified it) anyway. Beazley's conduct has, as

explained herein, actually caused Plaintiff these emotional injuries. Plaintiff is therefore entitled to punitive damages against Beazley for its malicious and oppressive conduct.

152. Plaintiff has incurred, and continues to incur, legal expenses and attorneys' fees related to this cause of action in sums to be determined at trial.

**NINTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

**(*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-1051)**

**(By Plaintiff Against all Defendants)**

153. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

154. A defendant becomes liable for tortious Intentional Infliction of Emotional Distress ("**IIED**") where they, or their agents, have engaged in "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. A defendant's conduct is 'outrageous' when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-1051.) Plaintiffs may also "pursue a claim for intentional infliction of emotional distress in the employment context where the conduct at issue violates [the] FEHA and also satisfies the elements of the claim …." (*Light v. Department of Parks & Recreation* (2017) 14 Cal.App.5th 75, 101; *Lin v. Kaiser Foundation Hospitals* (2023) 88 Cal.App.5th 712, 727-728 [IIED claims may be derivative of FEHA causes of action, and thus establishing a FEHA claim may be sufficient to establish an IIED claim].)

155. Defendants' individual and collective conduct, described throughout this pleading, was extreme and outrageous while clearly designed to cause Plaintiff emotional distress and other injuries. Alternatively, Defendants – both individually and jointly – acted with reckless disregard of the probability that Plaintiff would suffer emotional distress from their actions. An employer-employee relationship has been recognized as significantly contributing to the conclusion that particular conduct was outrageous. (*Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 498, fn. 2.) Defendants'

conduct includes, but is not limited to: (1) violating clear statute and public policy by denying Plaintiff reasonable accommodations for her disabilities, including those related to her pregnancy; (2) harassing Plaintiff throughout her protected disability/pregnancy leave to the point she literally passed out from exhaustion, stress, and lack of nutrition; (3) writing Plaintiff up for requiring surgery to remove cysts from her breasts and using this as the substantial basis for placing her on a PIP such that Ms. Brown consistently feared for her job and her ability to care for her young children; (4) seeking to get Plaintiff in trouble because she required pregnancy leave, including verbal attacks directly upon Ms. Brown and active attempts to undermine her support from her prior supervisor, Ms. Lawler – which Ms. Brown was aware of through conversations with said supervisor; (5) giving Defendant Ortiz – the man whom Plaintiff had just complained of discrimination – the power to decide whether Ms. Brown had passed her PIP or not (*i.e.*, Beazley gave him the power to decide if Ms. Brown would be terminated); and (6) intentionally denying Ms. Brown and her newborn children necessary income and medical coverage while Ms. Brown was disabled, all because Beazley was angry that she was injured and required a short amount of time to recover.

156. Defendants' conduct was extreme and outrageous because in response to Plaintiff's complaints to Ms. Lawler about working shifts longer than 11 hours without any rest and passing out at work, Ms. Lawler stated she would look into it. Ms. Lawler reported the conduct of Ms. Brown's coworkers as "unacceptable;" in other words, Ms. Lawler stood up against the violations of FEHA for the extraordinary hours Plaintiff was forced to work. On information and belief, Defendant Han rallied other employees against Ms. Lawler which led to Ms. Lawler's transfer to another team where she could no longer defend Ms. Brown. Defendants knew from California required training not to discriminate, harass, or retaliate against Ms. Brown on the basis of any of her protected characteristics (*e.g.*, gender and/or disabilities).

157. From the beginning of Plaintiff's employment, it was Defendant Han (Plaintiff's senior co-worker) who told Plaintiff not to log off or step away from her computer because of working needing to be done. On information and belief, Defendant Han was critical of Plaintiff for becoming pregnant, and was part of other co-workers who were also critical of Plaintiff becoming pregnant, labeling it as "irresponsible." Defendant Han and other co-workers told Plaintiff that passing out was

her own fault. Defendant Han led the charge for Beazley to terminate Plaintiff while setting Plaintiff up for failure. On or about Friday, December 16, 2022, Ms. Brown worked well over nine hours, again without breaks. Defendant Han then tasked Ms. Brown with a rush job because Plaintiff was still online and the rest of her team had conveniently logged off. All of Defendant Han's actions described were in the course and scope of her employment. Defendant Han's actions were extreme and outrageous because she labeled Plaintiff's pregnancy as "irresponsible," blamed her for passing out, forced her to work overtime, did not allow her time away from her computer and/or phone. Such actions were in clear violation of public policy to accommodate her disability. Furthermore, these actions were retaliatory and discriminatory because Plaintiff had serious medical needs that could be easily accommodated.

158. Defendant Han intended to cause Plaintiff emotional distress because her actions demonstrate that she was lobbying to have Plaintiff terminated and wanted to set her up for failure. Despite Plaintiff's complaints to supervisors and requests for accommodation, Defendant Han sought to pile up more work and rush jobs on Plaintiff. Alternatively, Defendant Han acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that Plaintiff was pregnant and had medical issues, and was present to observe Defendant Han's conduct.

159. As a direct and proximate result of the actions taken by Defendants, Plaintiff has suffered, and continues to suffer, special damages including, but not limited to, loss of past and future income, benefits, medical expenses, and other damages to be proven at trial. Defendants' conduct was a substantial factor in causing her special damages.

160. As a direct and proximate result of the actions taken by Defendants (including Beazley, by and through its employees and agents, and Defendants Han and Ortiz), Defendants have caused Plaintiff to suffer general damages including, but not limited to, shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress, fear for her infant children's well-being, and other damages to be proven at the time of trial. Defendants' conduct was a substantial factor in causing her general damages.

161. Beazley's conduct was malicious and oppressive because it terminated her for seeking necessary medical attention, passing out from overwork while pregnant, and seeking relief from

Defendant Ortiz' and Defendant Han's misconduct above. This resulted in Ms. Brown losing much of her medical coverage for her and her newborn child *and* putting her in fear of how she might provide for her family. Defendants' conduct was willful and malicious because they knew what they were doing was wrong due to their receipt of anti-discrimination, harassment, and retaliation training. Furthermore, Defendants knew or should have known that their conduct would cause Plaintiff additional and actual injury, both physical and emotional, but it took this action (or ratified it) anyway. Defendants' conduct has, as explained herein, actually caused Plaintiff these emotional injuries. Plaintiff is therefore entitled to punitive damages against Defendants for their malicious and oppressive conduct.

162. Plaintiff has incurred, and continues to incur, legal expenses and attorneys' fees related to this cause of action in sums to be determined at trial.

**<u>TENTH CAUSE OF ACTION</u>**

**Failure to Produce Employment Records**

**(Lab. Code §§ 226, 247.5, 432, and 1198.5)**

**(By Plaintiff Against Beazley and DOES 1-50)**

163. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

164. Upon request of any current or former employee, California employers must provide them with:

A. All copies of the employee's wage statements (*i.e.*, paystubs) within 21 days (Lab. Code § 226(b));

B. All records of hours worked and paid sick days accrued by the employee within the same time period set forth above (Lab Code § 247.5);

C. Copies of all documents the employee signed relating to their obtaining and retaining employment with the employer (Lab. Code § 432);

D. The employees complete personnel file (*i.e.*, all records that should have been included therein) within 30 days of receiving the employee's request. (Lab. Code § 1198.5(b)(1).) The California Department of Industrial Relations (the Labor Commissioner's parent agency) has

concluded that personnel files must include, but are not limited to, the following documents: (1) application for employment; (2) payroll authorization form; (3) notices of commendation, warning, discipline, and/or termination; (4) notices of layoff, leave of absence, and vacation; (5) notices of wage attachment or garnishment; (6) education and training notices and records; (7) performance appraisals/reviews; and (8) attendance records.[1] The statute itself only excludes from personnel files: (a) records relating to the investigation of a possible criminal offense; (b) letters of reference; and (c) ratings, reports, or records obtained prior to the employee's employment, prepared by identifiable examination committee members, or obtained in connection with a promotional exam. (Lab. Code § 1198.5(h).)

165. Labor Code §§ 226(f) and (h) and 1198.5(k)-(l) each authorize an employee to recover $750 in civil penalties (totaling $1,500) if their employer fails to timely and fully comply with the obligations above. These statutes also grant employees injunctive relief to seek these files in court, and it authorizes them to recover their reasonable attorneys' fees and costs in doing the same.

166. On April 2, 2024, Plaintiff sent her *first* written inspection request pursuant to the statutes immediately above to Beazley's main office address. Beazley, however, did not respond within the 21-day period required for pay stub production under Labor Code § 226. So, on May 7, 2024, Plaintiff mailed Beazley a *second* written inspection request to the same address and pursuant to the same statutes above. Beazley did not produce any records to Ms. Brown until June 7, 2024. Even then, it failed to produce Ms. Brown's pay stubs as requested and as required by law. (Lab. Code § 226.) Also missing were Plaintiff's time-entry records. (Lab. Code § 247.5.) On information and belief – given the sparse nature of the records Beazley did produce – Beazley also failed to provide all documents that were kept (and/or were required to be kept) in Ms. Brown's personnel file in violation of Labor Code § 1198.5.

167. On these grounds, Plaintiff petitions this Court to order Beazley to pay Ms. Brown $1,500 in civil penalties (Lab. Code §§ 226(f) and 1198.5(k)), to turn over the files that she requested pursuant to the aforementioned statutes, and to award her reasonable attorneys' fees and costs that she

[1] https://www.dir.ca.gov/dlse/faq_righttoinspectpersonnelfiles.htm

incurred in enforcing Beazley's compliance with these laws.

**ELEVENTH CAUSE OF ACTION**

**Private Attorneys General Act ("PAGA")**

**(Lab. Code §§ 2698, *et seq.*)**

**(By Plaintiff Against Beazley and DOES 1-50)**

168. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

169. Plaintiff, as an aggrieved employee, asserts this Private Attorneys' General Act ("**PAGA**") claim on behalf of the State of California, herself, and the other aggrieved employees, as defined above. However, Plaintiff does not assert an individual claim under PAGA, nor is she required to. (*Huff v. Securitas Security Services* (2018) 23 Cal.App.5th 745, 751 [an employee suffering even one violation of the Labor Code has standing to represent all others under PAGA]; *Balderas v. Fresh Start Harvesting, Inc.* (2024) 101 Cal.App.5th 533, 329-330.)

170. The statute of limitations period for this claim is from August 30, 2023 to the date this claim is adjudicated.

171. Labor Code § 2699(a) and (g) authorize aggrieved employees, on behalf of themselves and other current and former aggrieved employees, to bring a civil action to recover civil penalties pursuant to the procedures specified in Labor Code § 2699.3.

172. Labor Code § 2699(f) states, in relevant part, that where a Labor Code § provides a set civil penalty, then Plaintiff may seek recovery of that civil penalty via PAGA for each violation she and the aggrieved employees suffered per pay period. Where violated Labor Code §§ do not state a penalty, PAGA generally provides those civil penalties at "one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation." (Lab. Code § 2699(f)(2).) Seventy-five percent (75%) of these penalties shall be distributed to the LWDA and the remaining 25% shall be payable to Plaintiff and the aggrieved employees. (*Id.*, at subd. (i).)

173. During the applicable time period, Plaintiff alleges, on behalf of herself and the other aggrieved employees, that Defendants violated, or owes penalties, fees, and/or costs under: Labor

Code §§ 201, 202, 203, 204, 210, 218.5, 221, 226, 226.3, 226.7, 233, 245-249, 432.5-432.6, 510, 512(a), 551-552, 1174(d), 1194, 1194.2, 1197, 1197.1, 1198, 2800, and 2802, the Wage Order, Business and Professions Code §§ 17200, et seq., and all related local ordinances. These statutes and Beazley's violations thereof are described below:

A. Labor Code §§ 201 and 202 require employers to promptly pay their separating employees all wages owed to them. Labor Code § 203 provides that employers failing to do so are subject to a waiting time penalty equal to one day (*i.e.*, 8 hours) of pay for each day those wages go unpaid, for up to 30 days. Plaintiff alleges that Beazley failed to timely pay all wages owed to the aggrieved employees at the time of their separation in violation of Labor Code §§ 201 through 203.

B. Labor Code § 204 requires employers to pay their employees all wages earned each pay period within that same timeframe.

C. As above, Labor Code § 226 required Beazley to provide the aggrieved employees with accurate, itemized wage statements each pay period. Failure to do so results in civil penalties equal to "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Beazley consistently failed to provide the aggrieved employees with accurate, itemized wage statements in violation of Labor Code § 226.

D. Beazley failed to compensate the aggrieved employees with minimum wages for all hours worked, including pay for nonproductive time in violation of Labor Code §§ 204, 226.2, 1194, 1197, 1198, and any local minimum wage ordinance(s), thus incurring additional penalties and liability under Labor Code §§ 210, 218.5, 218.6, 1194.2, 1197.1, and 1199.

E. Beazley failed to compensate the aggrieved employees with all wages earned above minimum wage, including pay for nonproductive time, in violation of Labor Code Labor Code § 204, thus incurring additional penalties and liability under Labor Code §§ 210, 218.5, and 218.6.

F. Beazley failed to compensate the aggrieved employees with overtime wages for all time worked in excess of eight hours in a day and 40 hours in a week, and doubletime wages for all time worked in excess of twelve (12) hours in a day and all hours worked in excess of eight on the

seventh consecutive day of work. This conduct violates Labor Code §§ 204, 510, 1194, and 1198, thus incurring additional penalties and liability under Labor Code §§ 210, 218.5, and 218.6.

G. Beazley failed to compensate the aggrieved employees with one hour's pay for each late, interrupted, and/or unprovided meal period in violation of Labor Code §§ 204, 226.7, 512, and 1198.

H. Beazley failed to compensate the aggrieved employees with one hour's pay for each late, interrupted, and/or unprovided rest break in violation of Labor Code §§ 204, 226.7, 1198.

I. Beazley failed to compensate the aggrieved employees with all paid sick leave earned during their employment in violation of Labor Code §§ 204, 233, and 245-249 (the Healthy Workplaces, Healthy Families Act of 2014).

J. Beazley failed to reimburse the aggrieved employees for their reasonable business expenses in violation of Labor Code §§ 2800 and 2802, including (but not limited to), their personal cell phone, home internet, and home electricity usage all for the benefit of Beazley.

K. Beazley failed to maintain accurate employee records of Ms. Brown and the aggrieved employees in violation of the Wage Order § 7, and Labor Code §§ 247.5 and 1174(d), including (but not limited to) accurate records of all hours worked, and sick leave used and accrued.

L. Beazley required Ms. Brown and the aggrieved employees to consent to non-compete and non-disclosure agreements in violation of Labor Code §§ 432.5 through 432.6 and Business and Professions Code §§ 16600.5 and 16601 through 16602.

M. Beazley failed to fully and/or timely produce to the aggrieved employees all of their paystubs, records of hours worked (*e.g.*, their work schedules and punch in/out times), documents they signed in the course of securing and maintaining employment with Beazley, and their personnel files. As a result, Beazley has violated Labor Code §§ 226, 247.5, 432, and 1198.5.

174. Plaintiff seeks, on behalf the other aggrieved employees and the State of California, all applicable penalties for Beazley's violations above, plus all applicable interest, subject to proof at trial.

175. Plaintiff also seeks reimbursement of her fees and costs pursuant to Labor Code § 2699(g)(1).

**TWELFTH CAUSE OF ACTION**

**Class Action Allegations**

**(Bus. & Prof. Code §§ 17200, *et seq.*)**

**(By Plaintiff Against Beazley and DOES 1-50)**

176. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

177. This action has been brought and may be maintained as a class action pursuant to California Code of Civil Procedure § 382 because there is a well-defined community of interest among the persons who comprise the readily ascertainable class defined below and because Plaintiff is unaware of any difficulties likely to be encountered in managing this portion of the case as a class action. However, to the extent Defendant Han could possibly be a putative class member, Plaintiff (1) excludes her therefrom to avoid any conflicts, and (2) places Defendant Han on notice of her right to pursue similar claims against Beazley in her individual capacity.

178. **Class Definition:** The class is defined as follows, subject to the restriction above: All California based persons employed by Beazley as underwriting assistants and comparable positions at any time during the period four years prior to the filing of this action and ending on the date that final judgment is entered in this action (the "**Class**").

179. **Reservation of Rights:** Pursuant to Rule of Court 3.765(b), Plaintiff reserves the right to amend or modify the class definition with greater specificity, by further division into subclasses and/or by limitation to particular issues.

180. **Numerosity:** The Class members are so numerous that the individual joinder of each individual class member is impractical despite Beazley's defense counsel representing to Plaintiff that this class is likely to be fewer than 100 persons. While Plaintiff does not currently know the exact number of class members, Plaintiff is informed and believes that the actual number exceeds 30 and the minimum required for numerosity under California law.

181. **Commonality and Predominance:** Common questions of law and fact exist as to all Class members and predominate over any questions which affect only individual Class members. These questions include, but are not limited to:

A. Whether Beazley failed to provide the Class with all meal periods as required by section 11 of the Industrial Welfare Commission Wage Order § 4-2001 (the "**Wage Order**"), and Lab. Code § 512?

B. Whether Beazley failed to provide the Class with all rest periods as required by section 12 of the Wage Order?

C. Whether Beazley failed to pay all wages earned to Class members for all hours worked?

D. Whether Beazley failed to pay all wages earned to Class members for ten-minute rest periods?

E. Whether Beazley knowingly and intentionally failed to provide the Class with accurate wage statements?

F. Whether Beazley willfully failed to provide the Class with timely final wages?

G. Whether Beazley engaged in unfair competition within the meaning of Business and Professions Code §§ 17200, *et seq.*, with respect to the Class?

H. Whether Class members are entitled to restitution of money or property that Beazley may have acquired from them through alleged Labor Code violations?

182. **Typicality:** Plaintiff's claims are typical of the other class members' claims. Plaintiff is informed and believes and thereon alleges that Defendants have a policy, practice or a lack of a policy which resulted in Defendants failing to comply with the California Labor Code, and the Business and Professions Code.

183. **Adequacy of Class Representative:** Plaintiff is an adequate class representative in that he has no interests that are adverse to, or otherwise in conflict with, the interests of absent class members. Plaintiff is dedicated to vigorously prosecuting this action on behalf of class members. Plaintiff will fairly and adequately represent and protect the interests of class members.

184. **Adequacy of Class Counsel:** Plaintiff's counsel are adequate Class counsel in that they have no known conflicts of interest with Plaintiff or absent class members, are experienced in class action litigation and are dedicated to vigorously prosecuting this action on behalf of Plaintiff and absent Class members.

185. **Superiority:** A Class action is vastly superior to other available means for fair and efficient adjudication of class members' claims and would be beneficial to the parties and the Court. Class action treatment will allow a number of similarly situated persons to simultaneously and efficiently prosecute their common claims in a single forum without the unnecessary duplication of effort and expense that numerous individual actions would entail. In addition, the monetary amounts due to many individual Class members are likely to be relatively small and would thus make it difficult, if not impossible, for individual Class members to both seek and obtain relief. Moreover, a class action will serve an important public interest by permitting Class members to effectively pursue the recovery of monies owed to them. Further, a class action will prevent the potential for inconsistent or contradictory judgments inherent in individual litigation.

***FIRST CLASS CLAIM***

**FAILURE TO PROVIDE MEAL PERIODS**

**(Lab. Code §§ 226.7, 512, and 1198)**

**(By Plaintiff and the Class against Beazley and DOES 1-50)**

186. Plaintiff incorporates all paragraphs of the Complaint as if fully alleged herein.

187. At all relevant times during the applicable limitations period, Plaintiff and the Class have been non-exempt employees of Beazley and entitled to the benefits and protections of California Labor Code §§ 226.7, 512 and 1198, and the Wage Order.

188. Labor Code § 1198 states:

> The maximum hours of work and the standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees. The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful.

189. In relevant part, Labor Code Section 512 states:

> An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing

the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

190. In relevant part, Section 11 of the Wage Order states:

Meal Periods

(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee.

(B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

(C) Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

(D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

191. In addition, Labor Code Section 226.7 states:

(b) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health.

(c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the

> Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

192. Pursuant to California Labor Code § 512 and the Wage Order, Plaintiff and the Class were entitled to be provided with uninterrupted meal periods of at least 30 minutes for each day they worked five or more hours, and a second uninterrupted 30-minute meal period on days they worked more than 10 hours.

193. During the relevant time period, Beazley failed to provide Plaintiff and the Class with all timely meal periods required by California law, including, but not limited to, two 30-minute uninterrupted meal periods on workdays they worked more than 10 hours. Beazley provided Plaintiffs and the Class with an employee handbook that stated employees are required to take meal breaks, but – in practice – it denied them the opportunity to do so. It even instructed Plaintiff and the Class to skip (or work through) their meal breaks in order to meet their deadlines, all to Beazley's gain. Furthermore, Beazley made it so that Plaintiff and the Class were required to record that they took code-compliant meal breaks (even if this was not true) in order to release their time and, thus, get paid. Beazley would discipline Plaintiff and the Class in an unprofessional manner for actually taking their rest and/or meal periods during their shifts. As such, Beazley denied Plaintiff and the Class their meal periods and therefore entitled Plaintiff and the Class to premium wages. Plaintiff is informed and believes and thereon alleges that, at relevant times within the applicable limitations period, Beazley had a policy, practice, or a lack of a policy which resulted in Beazley not providing Plaintiff and the Class with all timely meal periods required by California law, including, but not limited to, two 30-minute uninterrupted meal periods on workdays they worked more than 10 hours.

194. Beazley failed to pay Plaintiff and the Class the additional wages required by California Labor Code § 226.7 for all workdays in which one or more meal periods were not provided to him. Plaintiff is informed and believes and thereon alleges that, at relevant times within the applicable limitations period, Beazley have maintained a policy, practice, or a lack of a policy which resulted in Beazley not providing the class with additional wages for all workdays on which one or more meal periods were not provided to each of them as required by California Labor Code § 226.7.

195. As a result of Beazley's unlawful conduct, Plaintiff and the Class have suffered damages in amounts subject to proof to the extent they were not paid additional wages owed for all meal periods not provided to them.

196. By reason of the above, Plaintiff and the Class are entitled to premium wages for workdays in which one or more meal periods were not provided to them pursuant to California Labor Code § 226.7.

***SECOND CLASS CLAIM***

**FAILURE TO PROVIDE REST PERIODS**

**(Lab. Code §§ 226.7 and 1198)**

**(By Plaintiff and the Class against Beazley and DOES 1-50)**

197. Plaintiff incorporates all paragraphs of the Complaint as if fully alleged herein.

198. At all relevant times during the applicable limitations period, Plaintiff and the Class have been non-exempt employees of Beazley and entitled to the benefits and protections of California Labor Code §§ 226.7, 1198, and the Wage Order.

199. Labor Code § 1198 states:

> The maximum hours of work and the standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees. The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful.

200. In relevant part, Section 12 of the Wage Order states:

> Rest Periods:
>
> (A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate often (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.
>
> (B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

201. In addition, Labor Code Section 226.7 states:

> (b) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health.
>
> (c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

202. Pursuant to the Wage Order, Plaintiff and the Class were entitled to be provided with net rest periods of at least ten minutes for each four-hour period of work, or major fraction thereof.

203. Beazley failed to provide Plaintiff with all required rest periods in accordance with the Wage Order. Beazley denied Plaintiff and the Class their rest periods which entitled them to premium wages. Plaintiff is informed and believes and thereon alleges that, at relevant times within the applicable limitations period, Beazley had a policy, practice, or a lack of a policy which resulted in Beazley not providing the Class with all rest periods required by California law. This includes requiring Plaintiff and Class members to consistently work through breaks in order to complete their assignments, instructing them to skip their breaks for Beazley's gain, and failing to provide even the guise of break periods after Plaintiff and the Class members worked more than 10 hours in a day.

204. Beazley failed to pay Plaintiff the additional wages required by California Labor Code § 226.7 for workdays in which one or more rest periods were not provided to Plaintiff. Plaintiff is informed and believes and thereon alleges that, at relevant times within the applicable limitations period, Beazley have maintained a policy, practice, or a lack of a policy which resulted in Beazley not providing the Class with additional wages for all workdays on which one or more rest periods were not provided to each of them as required by California Labor Code § 226.7.

205. As a result of Beazley's unlawful conduct, Plaintiff and the Class have suffered damages in amounts subject to proof to the extent they were not paid additional wages owed for all

rest periods not provided to them.

206. By reason of the above, Plaintiff and the members of the Class are entitled to premium wages for workdays in which one or more rest periods were not provided to them pursuant to California Labor Code § 226.7.

**THIRD CLASS CLAIM**

**FAILURE TO PAY EMPLOYEES ALL WAGES FOR ALL HOURS WORKED**

**(Lab. Code §§ 1194, 1197, and 1198)**

**(By Plaintiff and the Class against Beazley and DOES 1-50)**

207. Plaintiff incorporates all paragraphs of the Complaint as if fully alleged herein.

208. At all relevant times, Plaintiff and the Class have been non-exempt employees of Defendants and entitled to the benefits and protections of the California Labor Code §§ 1194, 1197, and 1198 and the Wage Order.

209. § 2 of the applicable Wage Order defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

210. § 4 of the applicable Wage Order requires an employer to pay non-exempt employees at least the minimum wage set forth therein for all hours worked, which consist of all hours that an employer has actual or constructive knowledge that employees are working.

211. Labor Code § 1194 invalidates any agreement between an employer and an employee to work for less than the minimum wage required under the applicable Wage Order.

212. Labor Code § 1197 makes it unlawful for an employer to pay an employee less than the minimum wage required under the applicable Wage Order for all hours worked during a payroll period.

213. Labor Code § 1198 makes it unlawful for an employer to employ an employee under conditions that violate the Wage Order.

214. Plaintiff is informed and believes that, at all relevant times, Beazley has applied centrally devised policies and practices to Plaintiff and the Class members with respect to working conditions and compensation arrangements.

215. Beazley compensated Plaintiff and the Class based on estimates of miles driven (instead

of the actual miles driven).

216. At all relevant times, Beazley required Plaintiff and the Class to perform work Beazley did not pay them for. The unpaid activities include, but are not limited to, the following:

A. Working through their unpaid "30-minute meal breaks", or skipping them entirely, while being forced to log that they *had* taken their unpaid breaks, resulting in them not being paid for these 30-minute periods as required by law;

B. Failing to pay Plaintiff and the Class members while they were engaged to wait for incoming tasks and communications from their coworkers and Beazley's clients after regular business hours; and,

C. Sick leave that was taken, and compensable, but which Beazley did not fully pay (or pay at all).

217. Plaintiff is informed and believes and thereon alleges that, at all relevant times, Beazley has maintained a policy, practice, or a lack of a policy which resulted in Beazley's failure to compensate Plaintiff and the Class for all hours worked as required by California law.

218. As a result of Beazley's unlawful conduct, Plaintiff and the other Class members have suffered damages in an amount, subject to proof, to the extent they were not paid the full amount of wages earned during each pay period during the applicable limitations period, including minimum wages.

219. Pursuant to Labor Code § 1194, Plaintiff, on behalf of Plaintiff and Class members, seeks to recover unpaid minimum wages, liquidated damages in amounts equal to the amounts of unpaid wages, interest thereon, and awards of reasonable costs and attorneys' fees, all in amounts subject to proof.

///

///

***FOURTH CLASS CLAIM***

**FAILURE TO PROVIDE ACCURATE EMPLOYEE RECORDS**

**(Lab. Code §§ 226 and 1174(d))**

**(By Plaintiff and the Class against Beazley and DOES 1-50)**

220. Plaintiff incorporates all paragraphs of the Complaint as if fully alleged herein.

221. At all relevant times during the applicable limitations period, Plaintiff and the Class have been employees of Beazley and entitled to the benefits and protections of California Labor Code § 226 and § 7 of the Wage Order.

222. Pursuant to California Labor Code § 226(a), Plaintiff and the Class were entitled to receive, semimonthly or at the time of each payment of wages, an accurate itemized statement showing:

A. Gross wages earned,

B. Total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission,

C. The number of piece rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis,

D. All deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item,

E. Net wages earned,

F. The inclusive dates of the period for which the employee is paid,

G. The name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement,

H. The name and address of the legal entity that is the employer, and

I. All applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

223. Pursuant to California Labor Code § 226(e), an employee suffering injury as a result of

a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorneys' fees.

224. Pursuant to California Labor Code § 226(e), an employee is deemed to suffer injury if the employer fails to provide a wage statement. Also, an employee is deemed to suffer injury if the employer fails to provide accurate and complete information as required by California Labor Code § 226(a) and the employee cannot "promptly and easily determine" from the wage statement alone one or more of the following:

A. The amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement pursuant to California Labor Code § 226(a);

B. Which deductions the employer made from gross wages to determine the net wages paid to the employee during the pay period;

C. The name and address of the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682 of the California Labor Code, the name and address of the legal entity that secured the services of the employer during the pay period; and

D. The name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number.

225. "Promptly and easily determine," as stated in California Labor Code § 226(e), means a reasonable person would be able to readily ascertain the information without reference to other documents or information.

226. As alleged herein, Beazley failed to provide Plaintiff and the Class all wages owed, including but not limited to, minimum wages for all hours worked and premium wages for unprovided rest and meal periods. As a result, Beazley has failed to properly and accurately itemize each employee's gross wages earned, net wages earned, the total hours worked, the applicable hourly rates, the corresponding number of hours worked at each hourly rate, and other requirements of California

Labor Code § 226. As a result, Beazley has violated California Labor Code § 226.

227. Further, the wage statements Beazley provided to Plaintiff and the Class failed to list: the correct address for the legal entity that is the employer, and accurate statements of their hours worked and therefore their appropriate deductions.

228. Beazley's failure to provide Plaintiff and the class with accurate wage statements was knowing and intentional. Beazley had the ability to provide Plaintiff and the Class with accurate wage statements but intentionally provided wage statements that Beazley knew were not accurate given its aforementioned policies and practices.

229. As a result of being provided with inaccurate wage statements by Beazley, Plaintiff and the Class have suffered injury. Their legal rights to receive accurate wage statements were violated and they were misled about the amount of wages they had actually earned and were owed. In addition, the absence of accurate information on their wage statements prevented immediate challenges to Beazley's unlawful pay practices, has required discovery and mathematical computations to determine the amounts of wages owed, has caused difficulty and expense in attempting to reconstruct time and pay records and/or has led to the submission of inaccurate information about wages to state and federal government agencies. Further, Plaintiff and the Class were not able to ascertain from the wage statements whether Defendants complied with their obligations under California Labor Code § 226(a).

230. Pursuant to California Labor Code § 226(e), Plaintiff and the Class are entitled to recover the greater of actual damages, or penalties of fifty dollars ($50) for the initial pay period in which a violation of California Labor Code § 226(a) occurred and one hundred dollars for each violation of California Labor Code § 226(a) in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000) per Class member, and are also entitled to an award of costs and reasonable attorneys' fees.

///

///

***FIFTH CLASS CLAIM***

**FAILURE TO PAY ALL WAGES OWED AT SEPARATION**

**(Lab. Code §§ 201-203)**

**(By Plaintiff and the Class against Beazley and DOES 1-50)**

231. Plaintiff incorporates all paragraphs of the Complaint as if fully alleged herein.

232. At all relevant times during the applicable limitations period, Plaintiff and the Class have been non-exempt employees of Beazley and entitled to the benefits and protections of California Labor Code §§ 201-203, and the Wage Order.

233. Labor Code § 201 provides that all earned and unpaid wages of an employee who is discharged are due and payable immediately at the time of discharge.

234. Labor Code § 202 provides that all earned and unpaid wages of an employee who quits after providing at least 72-hours' notice before quitting are due and payable at the time of quitting and that all earned and unpaid wages of an employee who quits without providing at least 72-hours' notice before quitting are due and payable within 72 hours.

235. By failing to pay earned minimum and premium wages to Plaintiff and the Class, Beazley failed to timely pay them all earned and unpaid wages in violation of Labor Code § 201 or § 202.

236. Plaintiff is informed and believes that Beazley's failures to timely pay all final wages to Plaintiff and the Class members have been willful in that Beazley have the ability to pay final wages in accordance with Labor Code §§ 201 and 202 but have intentionally adopted policies or practice that are incompatible with those requirements.

237. Labor Code § 203 provides that the wages of an employee continue on a daily basis as a penalty for up to 30 days where an employer willfully fails to timely pay earned and unpaid wages to the employee in accordance with Labor Code § 201 or § 202.

238. Plaintiff is informed and believes that Beazley's failures to timely pay Plaintiff and the Class all of their earned and unpaid wages have been willful in that, at all relevant times, Beazley has deliberately maintained policies and practices that violate the requirements of the Labor Code and the Wage Order even though, at all relevant times, they have had the ability to comply with those legal

requirements.

239. Pursuant to Labor Code § 203, Plaintiff seeks waiting time penalties on behalf of Plaintiff and the Class members, in amounts subject to proof not to exceed 30 days of waiting time penalties for each class member. (*Pineda v. Bank of America N.A.* (2010) 50 Cal.4th 1389, 1393 [§ 203 penalties are considered wages and are therefore subject to a three-year statute of limitations period].)

***<u>SIXTH CLASS CLAIM</u>***

**UNREIMBURSED BUSINESS EXPENSES**

**(Lab. Code §§ 2802 and 2804)**

**(By Plaintiff and the Class against Beazley and DOES 1-50)**

240. Plaintiff incorporates all paragraphs of the Complaint as if fully alleged herein.

241. At all relevant times during the applicable limitations period, Plaintiff and the Class have been non-exempt employees of Beazley and entitled to the benefits and protections of California Labor Code § 2802, and the Wage Order.

242. Labor Code § 2802(a) requires employers to indemnify their employees "for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." "Necessary expenditures or losses" means "all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section." (Lab. Code § 2802(c).)

243. "All awards made by a court … for reimbursement of necessary expenditures under this section shall carry interest at the same rate as judgments in civil actions. Interest shall accrue from the date on which the employee incurred the necessary expenditure or loss." (Lab. Code § 2802(b).)

244. Furthermore, Labor Code § 2804 voids any agreement to waive the protections of Labor Code § 2802 as a violation of public policy. (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 951-952 [such rights are nonwaivable].)

245. Here, Beazley had a policy or practice of requiring Plaintiff and the Class members to do the following:

A. Use their personally-owned cell phones for work purposes, including checking email and taking or making phone calls and text messages while not at their work computer (*i.e.*, when engaged to wait or on meal, rest, and bathroom breaks);

B. Use their home internet service for work-related purposes while working remotely (*e.g.*, during COVID-19 and after business hours), all to Beazley's gain;

C. Purchase and/or use their personally-owned desks so they could work remotely for Beazley;

D. Buy and/or use their personally-owned computer monitor(s) so they could work remotely for Beazley; and,

E. Purchase paper and pens for use while working for Beazley.

246. At all relevant times, Beazley knew (or should have known) of Plaintiff's and the Class members' aforementioned business expenses because it engineered the situation through which Plaintiff and the Class members would require these items and services, and – thus – incur expense in purchasing them. Beazley also knew that Plaintiff and the Class Members' purchases were substantially for Beazley's gain. However, Beazley consistently failed to reimburse Plaintiff and the Class members for their business expenses.

247. Beazley is therefore liable to Plaintiff and the Class members for their unreimbursed business expenses during the applicable class period, plus any applicable interest thereon.

248. Plaintiff and the Class members also seek their reasonable attorneys' fees and costs expended in pursuit of this cause of action.

## ***SEVENTH CLASS CLAIM***

## UNFAIR COMPETITION LAW

## (Lab. Code §§ 17200, *et seq.*)

## (By Plaintiff and the Class against Beazley and DOES 1-50)

249. Plaintiff incorporates all paragraphs of the Complaint as if fully alleged herein.

250. The unlawful conduct of Beazley alleged herein amounts to and constitutes unfair competition within the meaning of California Business & Professions Code §§ 17200, *et seq*. (the "**Unfair Competition Law**" or "**UCL**"). (*Safeway, Inc. v. Superior Court* (2015) 238 Cal.App.4th

1138, 1147 [the UCL defines "unfair competition" broadly to include "any unlawful, unfair or fraudulent business act or practice", and it makes those violations "independently actionable"].) Due to Beazley's unfair and unlawful business practices alleged herein, it has unfairly gained a competitive advantage over other comparable companies doing business in California that comply with their legal obligations to compensate employees for all earned wages and reimburse them for all expenses.

251. As a result of Beazley's unfair competition as alleged herein, Plaintiff and the Class members have suffered injuries in fact and lost money or property. For example, Plaintiff and the Class members were deprived of appropriate wages for all hours worked, or fraction thereof, and premium wages for all rest and meal periods not provided to them.

252. Pursuant to Business & Professions Code § 17203, Plaintiff and the Class members are entitled to restitution of all monies rightfully belonging to them that Beazley did not pay them or otherwise retained by means of their unlawful and unfair business practices.

253. Furthermore, the UCL also functions to extend the statute of limitations for the recovery of Plaintiff the Class members' unpaid wages from three years to four. (Bus. & Prof. Code § 17208; *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1192-1193; *Pineda*, *supra*, 50 Cal.4th at p. 1401.)

254. Plaintiff and the aggrieved employees are entitled to reasonable attorneys' fees in connection with their unfair competition claims pursuant to Code of Civil Procedure § 1021.5, the substantial benefit doctrine and/or the common fund doctrine.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

FIRST – SECOND & FOURTH – EIGHTH CAUSES OF ACTION

On behalf of herself against Beazley:

1. General and special damages according to proof;
2. Exemplary/punitive damages according to proof;
3. Civil penalties;
4. Equitable relief;
5. Pre-judgment and post-judgment interest on all damages awarded;

6. Attorneys' fees incurred;

7. Costs of suit incurred;

8. Declaratory relief; and,

9. Such other relief as this Court may deem just and proper.

THIRD CAUSE OF ACTION

On behalf of herself against all Defendants:

1. Civil penalties;

2. Equitable relief;

3. Pre-judgment and post-judgment interest on all damages awarded;

4. Attorneys' fees incurred;

5. Costs of suit incurred;

6. Declaratory relief; and,

7. Such other relief as this Court may deem just and proper.

NINTH CAUSE OF ACTION

On behalf of herself against all Defendants:

8. Civil penalties;

9. Equitable relief;

10. Pre-judgment and post-judgment interest on all damages awarded;

11. Attorneys' fees incurred;

12. Costs of suit incurred;

13. Declaratory relief; and,

14. Such other relief as this Court may deem just and proper.

TENTH CAUSE OF ACTION

On behalf of herself against Beazley:

1. Civil penalties;

2. Equitable relief;

3. Pre-judgment and post-judgment interest on all damages awarded;

4. Attorneys' fees incurred;

5. Costs of suit incurred;

6. Declaratory relief; and,

7. Such other relief as this Court may deem just and proper.

ELEVENTH CAUSE OF ACTION

On behalf of herself and all other aggrieved employees against Beazley:

1. Civil penalties;

2. Equitable relief;

3. Pre-judgment and post-judgment interest on all damages awarded;

4. Attorneys' fees incurred;

5. Costs of suit incurred;

6. Declaratory relief; and,

7. Such other relief as this Court may deem just and proper.

TWELFTH CAUSE OF ACTION

On behalf of herself and the Class against Beazley:

1. General and special damages according to proof;

2. Civil penalties;

3. Equitable relief;

4. Pre-judgment and post-judgment interest on all damages awarded;

5. Attorneys' fees incurred;

6. Costs of suit incurred;

7. Declaratory relief; and,

8. Such other relief as this Court may deem just and proper

Dated: November 6, 2024

GOLD SUMMIT LEGAL &
LAW OFFICE OF JAMES K. MOORE

ERIK J. CHRISTENSEN
Attorneys for Plaintiff
CORTNI BROWN

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury.

Dated: November 6, 2024

GOLD SUMMIT LEGAL &
LAW OFFICE OF JAMES K. MOORE

ERIK J. CHRISTENSEN
Attorneys for Plaintiff
CORTNI BROWN

**PROOF OF SERVICE**
(Code of Civ. Proc. §§ 1013(a) and 2015.5)

I am employed in the County of Washoe, State of Nevada. I am over the age of 18 and not a party to this action. My business mailing address is Gold Summit Legal, 548 Market St., Ste. 41750, San Francisco, CA 94104.

On the date listed below, and in the matter short-titled ***Kiyana Brown v. Beazley USA Services, Inc., et al.***, San Francisco County Superior Court Case No. CGC-24-619614, I served the Parties and/or their counsel addressed below with copies of the following captioned documents by the method(s) indicated herein:

**1. INIDIVIDUAL, PAGA, AND CLASS ACTION COMPLAINT;**
**2. CIVIL RIGHTS DEPARTMENTS' RIGHT TO SUE NOTICE;**
**3. SUMMONS;**
**4. CIVIL CASE COVER SHEET;**
**5. SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO ALTERNATIVE DISPUTE RESOLUTION INFORMATION PACKAGE; and,**
**6. NOTICE TO PLAINTIFF.**

**[ ]** **(BY PERSONAL DELIVERY):** I placed the original of the foregoing document in a sealed envelope addressed to the party listed above, and caused such envelope to be delivered by hand to the office of the addressee.

**[ ]** **(BY FACSIMILE):** I caused all pages of the above-entitled document to be sent to the recipient(s) by facsimile at the respective telephone/fax number(s) indicated, infra.

**[X]** **(BY ELECTRONIC MAIL):** The document listed supra was transmitted via email, and pursuant to a valid electronic service agreement, to the email address(es) on the service list attached or noted below. (Code of Civ. Proc. § 1010.6(a); Cal.R.Ct. 2.251.)

**[ ]** **(BY OVERNIGHT DELIVERY):** I deposited such document(s) in a box or other facility regularly maintained by UPS, or delivered such document(s) to courier or driver authorized by UPS, with delivery fees paid or provided for, and addressed to the person(s) being served. (Code Civ. Proc. § 1013(d) and (e).)

**[ ]** **(BY FIRST-CLASS MAIL):** In a sealed envelope, addressed as stated below, with postage thereon fully prepaid, and caused such envelope to be placed in the United States mail in Reno, Nevada. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice, mail is deposited for mailing with the United States Postal Service in Reno in the ordinary course of business on the same day mail is placed in the office receptacle for mailing, with postage thereon fully prepaid.

**[ ]** **(BY U.S. MAIL):** In a sealed envelope, addressed as stated below, with postage thereon fully prepaid, and caused such envelope to be placed in the United States mail in Reno, Nevada. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice, mail is deposited for mailing with the United States Postal Service in Reno in the ordinary course of business on the same day mail is placed in the office receptacle for mailing, with postage thereon fully prepaid.

| | |
|---|---|
| Angela Rafoth<br>ARafoth@littler.com<br>Samlecia Gaye<br>SGaye@littler.com<br>Charisse Goodman<br>CHGoodman@littler.com<br>LITTLER MENDELSON, P.C.<br>101 Second St., Ste. 1000<br>San Francisco, CA 94105<br><br>Counsel for Defendant<br>Beazley USA Services, Inc. | James K. Moore<br>james@jamesmoorelawfirm.com<br>assistant@jamesmoorelawfirm.com<br>LAW OFFICE OF JAMES K. MOORE, INC.<br>1155 High Street<br>Auburn, CA 95603<br><br>Counsel for Plaintiff<br>Jason Cook |

I declare under penalty of perjury under the laws of California that the foregoing is true and correct. Executed on November 13, 2024, in Washoe County, Nevada.

ERIK J. CHRISTENSEN

# EXHIBIT B

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
BEAZLEY USA SERVICES, INC.; ANDREW ORTIZ; JENNY HAN; and DOES 1-50, inclusive.

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
KIYANA BROWN, on behalf of herself, the other aggrieved employees, and all others similarly situated.

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!** Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Francisco County Superior Court
400 McAllister Street, San Francisco, CA 94102

CASE NUMBER:
*(Número del Caso):*
**CGC-24-619614**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Gold Summit Legal, Erik Christensen, 548 Market St., Ste. 41750, San Francisco, CA 94104, 415-516-2760

DATE: *(Fecha)* **11/08/2024** Clerk, by *(Secretario)* **AUSTIN LAM** , Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO — EUREKA

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date)*:





**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

**Print this form** **Save this form** **Clear this form**

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Erik J. Christensen (SBN 314595)
Gold Summit Legal, Inc., 548 Market St., Ste. 41750, San Francisco CA 94104

TELEPHONE NO.: 415-516-2760 FAX NO. :
EMAIL ADDRESS: erik@goldsummit.legal
ATTORNEY FOR *(Name):* Plaintiff Kiyana Brown

FOR COURT USE ONLY

ELECTRONICALLY
**FILED**
*Superior Court of California, County of San Francisco*
**11/06/2024**
**Clerk of the Court**
**BY: AUSTIN LAM**
**Deputy Clerk**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO**
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco 94102
BRANCH NAME:

CASE NAME:
Brown v. Beazley USA Services, Inc., et al.

## CIVIL CASE COVER SHEET

[X] **Unlimited** (Amount demanded exceeds $35,000)
[ ] **Limited** (Amount demanded is $35,000 or less)

## Complex Case Designation

[ ] Counter [ ] Joinder

Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: **CGC-24-619614**

JUDGE:

DEPT.:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [X] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [X] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [X] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [X] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [X] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify):* 12: Wrongful Term.; IIED; Discrim./Harass./Retaliation; PAGA; Wage & Hour Class Action
5. This case [X] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 11/06/2024
Erik J. Christensen

(TYPE OR PRINT NAME) (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

# Superior Court of California, County of San Francisco
# Alternative Dispute Resolution
# Information Package

The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action together with the cross-complaint. (CRC 3.221(c).)

**WHAT IS ADR?**

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to trial.

**WHY CHOOSE ADR?**

It is the policy of the Superior Court that every long cause, non-criminal, non-juvenile case should participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial. (Local Rule 4.)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

**<u>Electing to participate in an ADR process does not stop the time period to respond to a complaint or cross-complaint</u>**

**WHAT ARE THE ADR OPTIONS?**

The San Francisco Superior Court offers different types of ADR processes for general civil matters. The programs are described below:

**1) MANDATORY SETTLEMENT CONFERENCES**

Settlement conferences are appropriate in any case where settlement is an option. The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute. Mandatory settlement conferences are ordered by the court and are often held near the date a case is set for trial, although they may be held earlier if appropriate. A party may elect to apply to the Presiding Judge for a specially set mandatory settlement conference by filing an ex parte application. See Local Rule 5.0 for further instructions. Upon approval by the Presiding Judge, the court will schedule the conference and assign a settlement conference officer.

**2) MEDIATION**

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO (BASF),** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending. Experienced professional mediators work with parties to arrive at a mutually agreeable solution. The mediators provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. BASF staff handles conflict checks and full case management. The success rate for the program is 67% and the satisfaction rate is 99%. BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the fee are available to those who qualify. For more information, call 415-982-1600 or email adr@sfbar.org.

**(B) JUDICIAL MEDIATION PROGRAM** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at any time throughout the litigation process. Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge. Information about the Judicial Mediation Program may be found by visiting the ADR page on the court's website: www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

**(C) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may select any private mediator of their choice. The selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

**(D) COMMUNITY BOARDS MEDIATION SERVICES:** Mediation services are offered by Community Boards (CB), a nonprofit resolution center, under the Dispute Resolution Programs Act. CB utilizes a three-person panel mediation process in which mediators work as a team to assist the parties in reaching a shared solution. To the extent possible, mediators are selected to reflect the demographics of the disputants. CB has a success rate of 85% for parties reaching a resolution and a consumer satisfaction rate of 99%. The fee is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available. For more information, call 415-920-3820 or visit communityboards.org.

**3) ARBITRATION**

An arbitrator is a neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION**

When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.1 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after being assigned to judicial arbitration. There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION**

Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

**HOW DO I PARTICIPATE IN ADR?**

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's or court-affiliated ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet and available on the court's website); or
- Indicating your ADR preferences on the Case Management Statement (available on the court's website); or
- Contacting the court's ADR Department (see below), the Bar Association of San Francisco's ADR Services, or Community Boards.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103-A, San Francisco, CA 94102
415-551-3869
Or, visit the court's ADR page at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE AND FILE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. YOU MUST ALSO CONTACT BASF OR COMMUNITY BOARDS TO ENROLL IN THEIR LISTED PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF OR COMMUNITY BOARDS.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name *and address*)<br><br>TELEPHONE NO.:<br><br>ATTORNEY FOR *(Name)*: | *FOR COURT USE ONLY* |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO**<br>400 McAllister Street<br>San Francisco, CA 94102-4514 | |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |
| **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER: ______________________<br><br>**DEPARTMENT 610** |

**1) The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐ **Mediation Services of the Bar Association of San Francisco (BASF)** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐ **Mediation Services of Community Boards (CB)** – Service in conjunction with DRPA, CB provides case development and one three-hour mediation session. Additional sessions may be scheduled. The cost is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available to those who qualify. communityboards.org

☐ **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐ **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

☐ **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

Judge Requested (see list of Judges currently participating in the program): ________________________________

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days ☐ 90-120 days ☐ Other (please specify) ___________________

☐ **Other ADR process** (describe) ____________________________________________________________

**2) The parties agree that the ADR Process shall be completed by (date):** ____________________________

**3) Plaintiff(s) and Defendant(s) further agree as follows:**

______________________________________________________________________________

| | |
|---|---|
| ________________________________<br>Name of Party Stipulating | ________________________________<br>Name of Party Stipulating |
| ________________________________<br>Name of Party or Attorney Executing Stipulation | ________________________________<br>Name of Party or Attorney Executing Stipulation |
| ________________________________<br>Signature of Party or Attorney | ________________________________<br>Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated: ______________________ | Dated: ______________________ |

☐ ***Additional signature(s) attached***

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
- Confession of Judgment *(non-domestic relations)*
- Sister State Judgment
- Administrative Agency Award *(not unpaid taxes)*
- Petition/Certification of Entry of Judgment on Unpaid Taxes
- Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition



For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form Save this form Clear this form

# NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:** **APR 09, 2025**

**TIME:** **10:30 am**

**PLACE:** **Department 610**
**400 McAllister Street**
**San Francisco, CA 94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference. However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed and served twenty-five days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state. **This case is eligible for electronic filing and service per Local Rule 2.11. For more information, please visit the Court's website at https://sf.courts.ca.gov under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

## ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION, AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

(SEE LOCAL RULE 4)

Plaintiff **must** serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint. (CRC 3.221.) The ADR package may be accessed at https://sf.courts.ca.gov/divisions/civil-division/alternative-dispute-resolution or you may request a paper copy from the filing clerk. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400 McAllister Street, Room 103-A**
**San Francisco, CA 94102**
**adrcoordinator@sftc.org**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**

# Superior Court of California, County of San Francisco
## Information Sheet
## Voluntary Expedited Jury Trial Summary

The San Francisco Superior Court encourages the use of Voluntary Expedited Jury Trials ("EJTs") in appropriate cases. EJTs provide an excellent opportunity to resolve your client's case in an expeditious and inexpensive way. Voluntary EJTs are authorized by statute. CCP §§ 630.01.

EJTs can resolve your entire case **or** a single important case critical issue that, once adjudicated, can promote resolution of the entire case (for example: course and scope of employment, causation of an injury, whether a contract was formed, etc.) EJTs promote equal access to civil justice as they are less expensive, consume fewer courtroom days, provide flexibility throughout, encourage high/low agreements to limit risk, and feature streamlined pre-trial procedures.

These are highlights of an EJT (C.C.P. §§ 630.01 et seq. and Rules of Court 3.1549 - 3.1553):

- Parties encouraged to submit a joint jury questionnaire;
- 8 jurors (6 must agree);
- 3 peremptory challenges per side;
- 5-hour time limit per side unless agreed otherwise and approved;
- One to two court days completion unless agreed otherwise and approved;
- Option to present evidence by stipulation and objection;
- High/low arrangement option;
- Limited appeal (misconduct by judge or jury substantially affecting parties' rights or corruption, or bad faith.)

If the parties agree to the Voluntary EJT, they should file and serve the completed and signed (Proposed) Consent Order for Voluntary Expedited Jury Trial, Judicial Council Form EJT-020.

# EXHIBIT C

LEE E. SHELDON, Bar No. 263310
lsheldon@littler.com
ANGELA J. RAFOTH, Bar No. 241966
arafoth@littler.com
SAMLECIA D. GAYE, Bar No. 296981
sgaye@littler.com
LITTLER MENDELSON, P.C.
101 Second Street, Suite 1000
San Francisco, California 94105
Telephone: 415.433.1940
Fax No.: 415.399.8490

Attorneys for Defendant
BEAZLEY USA SERVICES, INC.

ELECTRONICALLY
**FILED**
*Superior Court of California,*
*County of San Francisco*

**12/12/2024**
**Clerk of the Court**
**BY: SAHAR ENAYATI**
**Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

KIYANA BROWN, on behalf of herself, the other aggrieved employees, and all others similarly situated,

Plaintiff,

v.

BEAZLEY USA SERVICES, INC.; ANDREW ORTIZ; JENNY HAN; and DOES 1-50, inclusive,

Defendants.

Case No. CGC-24-619614

**DEFENDANT BEAZLEY USA SERVICES, INC.'S ANSWER TO COMPLAINT**

Defendant, BEAZLEY USA SERVICES, INC. ("Defendant") hereby answers KIYANA BROWN's ("Plaintiff") complaint for damages ("Complaint") as follows:

**GENERAL DENIAL**

Pursuant to the provisions of California Code of Civil Procedure section 431.30, Defendant generally denies each and every allegation contained in Plaintiff's Complaint, and further denies that Plaintiff is entitled to penalties, attorneys' fees, costs of suit, general damages, special damages, compensatory damages, interest, injunctive relief, or any other relief of any kind whatsoever.

**AFFIRMATIVE AND OTHER DEFENSES**

Defendant asserts the following affirmative and other defenses, which they have designated, collectively, as "affirmative defenses." Defendant's designation of the defenses as "affirmative" is not intended to alter Plaintiff's burden of proof with regard to any element of her causes of action. Moreover, Defendant does not presently know all the factors concerning Plaintiff's conduct sufficient to state all affirmative defenses at this time.

**FIRST AFFIRMATIVE DEFENSE**

**(Failure to State a Cause of Action)**

1. As a separate and distinct affirmative defense, Defendant is informed and believes that a reasonable opportunity for investigation and discovery will reveal, and on that basis alleges, that Plaintiff's Complaint and each cause of action alleged therein, is barred, in whole or in part, because Plaintiff fails to state facts sufficient to constitute a cause of action upon which relief may be granted.

**SECOND AFFIRMATIVE DEFENSE**

**(Equitable Defenses)**

**2.** As a separate and distinct affirmative defense, Defendant is informed and believes that further investigation and discovery will reveal, and on that basis alleges, that the Complaint and each cause of action set forth therein, or some of them, are barred, in whole or in part, by the doctrines of consent, unjust enrichment, waiver, release, estoppel, laches, and/or unclean hands.

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

**THIRD AFFIRMATIVE DEFENSE**

**(Failure to Exhaust Administrative Remedies)**

3. As a separate and distinct defense, Defendant alleges that Plaintiff's claims are barred and/or estopped by Plaintiff's failure to exhaust appropriate administrative and/or internal remedies prior to filing suit, including, but not limited to, administrative remedies pursuant to the provisions of the California Fair Employment and Housing Act ("FEHA"). Defendant further alleges that the Complaint, and each and every cause of action alleged therein, is barred, in whole or in part, to the extent Plaintiff and/or some or all of the putative class members failed to exhaust appropriate internal remedies or otherwise properly perfect a right of action against Defendant.

**FOURTH AFFIRMATIVE DEFENSE**

**(Claims Exceed Scope of Administrative Charge)**

4. As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein are barred, in whole or in part, because, assuming, without conceding, that Plaintiff did attempt to exhaust Plaintiff's administrative remedies with the DFEH/CRD, the causes of action asserted in the Complaint exceed the scope of any potential charges filed with the DFEH/CRD or any other governmental agency.

**FIFTH AFFIRMATIVE DEFENSE**

**(Failure to Exhaust Internal Remedies)**

5. As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein, or some of them, are barred, in whole or in part, by Plaintiff's failure to exhaust appropriate internal remedies.

**SIXTH AFFIRMATIVE DEFENSE**

**(Statute of Limitation)**

6. As a separate and distinct affirmative defense, Defendant alleges that the Complaint, and each and every cause of action set forth therein, or some of them, is barred, in whole or in part, by the applicable statute(s) of limitation, including, but not limited to, the limitation periods contained in section 17208 of the California Business and Professions Code; California Government

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

Code sections 12960, and 12965 and California Code of Civil Procedure sections 335.1, 337, 338, 339, 340 and 343, and California Labor Code sections 98.6, 203, 226, and 1198.5.

**SEVENTH AFFIRMATIVE DEFENSE**

**(After-Acquired Evidence)**

7. As a separate and distinct affirmative defense, Defendant alleges that to the extent that, during the course of this litigation, Defendant acquires any evidence of additional wrongdoing by Plaintiff, which wrongdoing would have materially affected the terms and conditions of Plaintiff's employment or would have resulted in Plaintiff either being demoted, disciplined, or terminated, such after-acquired evidence shall bar Plaintiff's claims on liability or damages or shall reduce such claims as provided by law.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Plaintiff's Breach of Duties)**

8. As a separate and distinct defense, Defendant alleges that the Complaint and each purported cause of action therein, is barred, in whole or in part, because Plaintiff violated her duties to Defendant, including Plaintiff's obligations as an employee under California Labor Code sections 2854 and/or 2856-2859. During the relevant time period, Defendant maintained legally compliant policies including, but not limited to, policies that prohibit discrimination, harassment, and retaliation, among others. These policies were generally distributed to employees, including Plaintiff. To the extent that Plaintiff failed to report any alleged retaliation, and/or wrongful termination, she is now barred from seeking relief herein. Also, to the extent Plaintiff failed to timely inform Defendant about the alleged unlawful conduct in the workplace, if any, she is now barred from seeking relief herein.

**NINTH AFFIRMATIVE DEFENSE**

**(Avoidable Consequences)**

9. As a separate and distinct affirmative defense, Defendant alleges that each purported cause of action contained in the Complaint, or some of the causes of action, is or are barred, in whole or in part, or any recovery should be reduced, pursuant to the avoidable consequences doctrine, because Defendant exercised reasonable care to prevent and promptly correct any discriminatory or

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

otherwise unlawful behavior including, but not limited to, by having in place anti-discrimination and anti-harassment policies. Defendant alleges that Plaintiff unreasonably failed to take advantage of any preventative and corrective opportunities provided to her by Defendant or to otherwise avoid harm and that Plaintiff's reasonable use of Defendant's procedures would have prevented at least some, if not all, of the purported harm of which Plaintiff now claims. *See State Dep't of Health Services. v. Super. Ct.*, 31 Cal. 4th 1026 (2003).

**TENTH AFFIRMATIVE DEFENSE**

**(Managerial Privilege)**

10. As a separate and distinct affirmative defense, Defendant alleges that Plaintiff's Complaint cannot be maintained because Defendant's conduct (and the conduct of Defendant's officers, managers and/or employees while acting in the course and scope of their employment) is protected by the managerial privilege in that all actions taken with respect to Plaintiff's employment were undertaken and exercised with proper managerial discretion, and for proper, lawful reasons.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Business Necessity)**

11. As a separate and distinct defense, Defendant alleges, without admitting that Defendant engaged in any of the acts or omissions alleged in Plaintiff's Complaint, that any such acts or omissions were undertaken for business necessity and/or for lawful business reasons.

**TWELFTH AFFIRMATIVE DEFENSE**

**(Defendant Acted in Good Faith and with Good Cause)**

12. As a separate and distinct defense, Defendant alleges, without admitting that Defendant engaged in any of the acts or omissions alleged in Plaintiff's Complaint, that the Complaint and each cause of action set forth therein cannot be maintained because good cause existed for each and every action taken by Defendant with respect to Plaintiff and because Defendant acted reasonably and in good faith, at all times, based upon all relevant facts and circumstances known by Defendant at the time they acted. Defendant alleges that any claims for damages or penalties under California Business and Professions Code section 17200, et. seq., or California Labor Code sections 201 to 203, 226, 226.7, 233, 246, 510, 512, 1174, 1194, 1197, 1197.1, 1198,

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

2802, 2804 or any IWC Wage Order fail because Defendant did not willfully fail to comply with the provisions of the California Labor Code, the applicable Wage Order, or the California Business & Professions Code, instead acting in good faith and with reasonable grounds for believing it did not violate them.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Mixed Motive)**

13. As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein, or some of them, cannot be maintained because, if any unlawful, discriminatory, harassing, or retaliatory motive existed in connection with any employment decision involving Plaintiff, which Defendant denies, such employment decision would have been the same even without any such unlawful discriminatory, harassing, or retaliatory motive.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Outside Course and Scope)**

14. As a separate and distinct affirmative defense, Defendant alleges that the Complaint, and each cause of action set forth therein, or some of them, cannot be maintained because, to the extent that any employees of Defendant took the actions alleged, such actions were committed outside the course and scope of such employees' employment, were not authorized, adopted or ratified by Defendant and/or Defendant did not know of, nor should have known of, such conduct.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Alleged Emotional Distress Caused by Outside Factors)**

15. As a separate and distinct affirmative defense, Defendant alleges that if Plaintiff has suffered any emotional distress as alleged in her Complaint, such emotional distress was proximately caused by factors other than Plaintiff's employment, the actions of Defendant and/or anyone acting on Defendant's behalf.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Contribution to Purported Emotional Distress)**

16. As a separate and distinct defense, Defendant alleges that if Plaintiff suffered any emotional distress (and Defendant denies that Plaintiff suffered any such distress), Plaintiff

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

contributed to her own distress and, by reason of her contribution, any remedy to which she might otherwise be entitled must be denied or reduced.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Emotional Distress Unconstitutional)**

17. As a separate and distinct defense, Defendant alleges that Plaintiff is not entitled to recover emotional distress damages because California's system of emotional distress damages is unconstitutional under *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), as well as the United States and California Constitutions.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(Alleged Emotional Distress Damages a Violation of Due Process)**

18. As a separate and distinct defense, Defendant alleges that Plaintiff is not entitled to recover any emotional distress damages, because the provisions of California law allowing for the award of emotional distress damages and the substantive rules, procedures, and standards for determining whether or not to award them and, if so, in what amount, violate Defendant's due process rights under the United States and/or California constitutions.

**NINETEENTH AFFIRMATIVE DEFENSE**

**(Punitive/Exemplary Damages Barred)**

19. As a separate and distinct affirmative defense, Defendant alleges that to the extent Plaintiff seeks punitive/exemplary damages, Defendant's good faith efforts to prevent discrimination, harassment, retaliation, and any other unlawful acts bar any such award. *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526 (1999).

**TWENTIETH AFFIRMATIVE DEFENSE**

**(No Knowledge Justifying Punitive Damages)**

20. As a separate and distinct affirmative defense, Defendant is informed and believes that a reasonable opportunity for investigation and discovery will reveal and, on that basis alleges, without admitting to any of the acts, conduct or statements attributed to Defendant by Plaintiff's Complaint, that Plaintiff's claims for punitive/exemplary damages are barred because such acts, conduct or statements were not taken with the advance knowledge, conscious disregard,

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

authorization, ratification or act of oppression, fraud or malice on the part of an employee, officer, director or managing agent of Defendant.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

**(Punitive Damages Unconstitutional)**

21. As a separate and distinct affirmative defense, Defendant alleges that Plaintiff is not entitled to recover any punitive/exemplary damages because the provisions of California law regarding such award violates Defendant's rights to due process and/or equal protection under the law, under the United States and/or California Constitutions.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

**(Prejudgment Interest Cannot Be Granted)**

22. As a separate and distinct affirmative defense, Defendant is informed and believes that a reasonable opportunity for investigation and discovery will reveal, and on that basis alleges, that Plaintiff's Complaint, and each cause of action alleged therein, or some of them, is barred, in whole or in part, because the Complaint fails to properly state a claim upon which prejudgment interest may be awarded, as the damages claimed are not sufficiently certain.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

**(No Costs of Suit)**

23. As a separate and distinct affirmative defense, Defendant alleges that Plaintiff has failed to state facts sufficient to entitle her to costs of suit incurred herein and/or an award of attorneys' fees.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

**(Offset)**

24. As a separate and distinct affirmative defense to the Complaint and each and every claim for relief contained therein, Defendant asserts that any recovery by Plaintiff must be offset, denied, or reduced by any compensation that Plaintiff has received from any other source.

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

**(Bad Faith and/or Frivolous Claims)**

25. As a separate and distinct affirmative defense, Defendant alleges that Plaintiff's claims are unreasonable, were filed in bad faith, and/or are frivolous and, for such reasons, justify an award of attorneys' fees and costs against Plaintiff and/or her attorneys pursuant to California law including, but not limited to, California Code of Civil Procedure section 128.5 and/or California Government Code section 12965(b).

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

**(Health and Safety)**

26. As a separate and distinct affirmative defense, Defendant is informed and believes that a reasonable opportunity for investigation and discovery will reveal, and on that basis allege, that the Complaint and each cause of action set forth therein, or some of them, are barred because, to the extent that the Court may find that Plaintiff does have a disability that limits a major life activity and that Defendant had an obligation to reasonably accommodate such a disability, Plaintiff, even with reasonable accommodation, was unable to perform the essential functions of her position in a manner that would not endanger Plaintiff's health or safety.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

**(No Disability)**

27. As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein, or some of them, are barred because Plaintiff does not have a disability that limits a major life activity.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

**(Essential Functions of Job)**

28. As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein is barred, in whole or in part, because to the extent that the Court may find that Plaintiff does have a disability that Defendant had an obligation to reasonably accommodate, Plaintiff could not perform the essential functions of her job, with or without reasonable accommodation.

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

**(Not a Qualified Individual)**

29. As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein, or some of them, are barred because to the extent that the Court may find that Plaintiff does have a disability that limits a major life activity, Plaintiff was not a qualified individual because she could not perform the essential functions of her position, with or without reasonable accommodation.

**THIRTIETH AFFIRMATIVE DEFENSE**

**(No Reasonable Accommodation)**

30. As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein, or some of them, are barred because to the extent that the Court may find that Plaintiff does have a disability that limits a major life activity and that Defendant had an obligation to reasonably accommodate such a disability, no reasonable accommodation existed which would have permitted Plaintiff to perform the essential functions of her position.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

**(Failure to Engage in Interactive Process)**

31. As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein, or some of them, are barred because to the extent that the Court may find that Plaintiff does have a disability that limits a major life activity and that Defendant had an obligation to reasonably accommodate such a disability, Plaintiff failed to engage in the interactive process reasonably and in good faith.

**THIRTY-SECOND AFFIRMATIVE DEFENSE**

**(Undue Hardship)**

32. As a separate and distinct affirmative or other defense, Defendant is informed and believes that a reasonable opportunity for investigation and discovery will reveal and, on that basis allege that the Complaint and each cause of action set forth therein is barred because, to the extent that the Court may find that Plaintiff does have a disability that limits a major life activity and that

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

Defendant had an obligation to reasonably accommodate such disability, any accommodation of Plaintiff's alleged disability would have imposed an undue hardship on Defendant.

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

**(At-Will Employment)**

33. Defendant alleges that the Complaint and each cause of action set forth therein cannot be maintained as Plaintiff was at all relevant times an at-will employee with no entitlement to continued employment, pursuant to Section 2922 of the California Labor Code.

**THIRTY-FOURTH AFFIRMATIVE DEFENSE**

**(Comparative Fault)**

34. Defendant is informed and believes that a reasonable opportunity for investigation and discovery will reveal and, on that basis alleges, that if Plaintiff suffered any loss, damage, or detriment as a result of the facts alleged in the Complaint, which Defendant continues to deny, such loss, damage, or detriment was caused and contributed to by Plaintiff's own acts, omissions, carelessness, negligence, fraud, or other misconduct of Plaintiff. Plaintiff's recovery, if any, should be diminished in proportion to the percentage of Plaintiff's negligence and fault.

**THIRTY-FIFTH AFFIRMATIVE DEFENSE**

**(No Ratification of Alleged Misconduct)**

35. As a separate and distinct affirmative defense, Defendant alleges that to the extent any individual engaged in any discriminatory, retaliatory, harassing or otherwise unlawful behavior, the alleged acts were committed outside the course and scope of employment.

**THIRTY-SIXTH AFFIRMATIVE DEFENSE**

**(Prompt Remedial Action)**

36. As a separate and distinct affirmative defense, the Complaint, and each purported cause of action therein, or some of them, cannot be maintained against Defendant because Defendant, at all relevant times, took prompt and appropriate corrective action in response to Plaintiff's concerns, thereby satisfying all legal obligations Defendant had to Plaintiff, if any. Defendant alleges that even if the alleged harassing conduct occurred (which Defendant denies),

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

Defendant took immediate and appropriate corrective action to stop the alleged conduct from continuing.

**THIRTY-SEVENTH AFFIRMATIVE DEFENSE**

**(No Unlawful Policy)**

37. As a separate and distinct affirmative defense to the Complaint, Defendant alleges that Plaintiff's alleged damages were not proximately caused by any unlawful policy, custom, practice and/or procedure promulgated and/or tolerated by Defendant.

**THIRTY-EIGHTH AFFIRMATIVE DEFENSE**

**(Indemnity)**

38. As a separate and distinct defense, Defendant alleges that, with respect to the Complaint and each cause of action alleged therein, Defendant is entitled to having liability reduced due to equitable, implied, contractual and/or comparative indemnity.

**THIRTY-NINTH AFFIRMATIVE DEFENSE**

**(Same Decision)**

39. As a separate and distinct affirmative defense, Defendant alleges that assuming, arguendo, any adverse employment action was taken, in whole or part, based on Plaintiff's alleged disability, alleged protected trait, or alleged protected activity (which Defendant denies), the same alleged adverse employment action would have been undertaken regardless of Plaintiff's alleged disability, alleged protected trait, or alleged protected activity.

**FORTIETH AFFIRMATIVE DEFENSE**

**(No Whistleblower Protected Activity)**

40. As a separate and distinct affirmative defense, Defendant alleges that Plaintiff's claim for retaliation in violation of Labor Code section 1102.5 is barred because: (i) Plaintiff did not engage in a protected activity; (ii) there is no evidence that the protected activity was a contributing factor in Defendant's decision to terminate her employment; and (iii) even if Plaintiff engaged in a protected activity, which Defendant denies, the same employment decision would have been made based on legitimate, independent reasons within the meaning of Labor Code section 1102.6.

**FORTY-FIRST AFFIRMATIVE DEFENSE**

**(Investigation Performed)**

41. As a separate and distinct affirmative defense, Defendant alleges that Plaintiff's Complaint is barred, in whole or in part, on the ground that Defendant conducted a reasonable investigation of any report by Plaintiff of inappropriate or unlawful conduct, assuming such a report was made, and took all necessary and appropriate action based upon that investigation.

**FORTY-SECOND AFFIRMATIVE DEFENSE**

**(Injury Outside Scope of Employment)**

42. As a separate and distinct affirmative defense, Defendant alleges that, to the extent Plaintiff has suffered any emotional and/or physical injuries, which Defendant denies, any such claims by Plaintiff are barred to the extent such emotional and/or physical injuries were incurred or sustained outside the course and scope of her employment with Defendant.

**FORTY-THIRD AFFIRMATIVE DEFENSE**

**(Legitimate Non-Discriminatory and Non-Retaliatory Reasons)**

43. As a separate and distinct affirmative defense, Defendant alleges that it acted reasonably and in good faith at all times based on all relevant facts and circumstances known at the time, and that all actions taken with regard to Plaintiff were taken for legitimate, good faith, non-discriminatory, non-pretextual, and non-retaliatory business reasons.

**FORTY-FOURTH AFFIRMATIVE DEFENSE**

**(Class Action – No Standing)**

44. Defendant alleges that Plaintiff lacks standing to pursue the claims alleged in the Complaint on behalf of herself and/or the putative class members, including but not limited to putative class members who were based in Defendant's California office as "underwriting assistants and comparable positions" as alleged in the Complaint.

**FORTY-FIFTH AFFIRMATIVE DEFENSE**

**(Class Action - Violation of Due Process)**

45. Defendant alleges that the Complaint, and each and every cause of action set forth therein, is barred because the certification of a class, as applied to the facts and circumstances of this

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA
94105
415.433.1940

case, would constitute a denial of Defendant's due process rights, both substantive and procedural, in violation of the Fourteenth Amendment to the United States Constitution and the California Constitution.

**FORTY-SIXTH AFFIRMATIVE DEFENSE**

**(Prior Release)**

46. Defendant alleges that the Complaint, and each and every cause of action alleged therein, is barred to the extent that Plaintiff and/or some or all of the putative class members have released Defendant from any liability as alleged in the Complaint.

**FORTY-SEVENTH AFFIRMATIVE DEFENSE**

**(Class Action – Offset or Credit)**

47. Defendant alleges that the Complaint, and each and every cause of action set forth therein, is barred because assuming Plaintiff and/or some or all of the putative class members are entitled to any unpaid wages, Defendant is entitled to a credit or setoff, including, but is not limited to, amounts erroneously overpaid to Plaintiff, so as to prevent unjust enrichment.

**FORTY-EIGHTH AFFIRMATIVE DEFENSE**

**(Not Hours Worked)**

48. Defendant alleges that the Complaint, and each and every cause of action alleged therein, is barred, in whole or in part, because the time alleged by Plaintiff and/or some or all of the putative class members does not constitute "hours worked" within the meaning of state or federal law.

**FORTY-NINTH AFFIRMATIVE DEFENSE**

**(De Minimis)**

49. Defendant alleges that the Complaint, and each and every cause of action alleged therein, is barred, in whole or in part, because any work of Plaintiff and/or some or all of the putative class members beyond their compensated workday or workweek was *de minimis*.

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA
94105
415.433.1940

**FIFTIETH AFFIRMATIVE DEFENSE**

**(Meal Periods - Provided)**

50. Defendant alleges that any meal period claims are barred, in whole or in part, because Plaintiff and/or the putative class members were provided with all meal periods required by statute, Wage Order or administrative regulation.

**FIFTY-FIRST AFFIRMATIVE DEFENSE**

**(Meal Periods – Not Prevented)**

51. Defendant alleges that any meal period claims are barred, in whole or in part, because Defendant did not prevent Plaintiff or the putative class members from taking such meal periods.

**FIFTY-SECOND AFFIRMATIVE DEFENSE**

**(Meal Periods – Voluntary Waiver)**

52. Defendant alleges that civil penalties pursuant Labor Code section 558 predicated on Labor Code sections 226.7 and 512 are inappropriate because, to the extent, if any, that Plaintiff and/or some or all of the putative class members did not take their meal periods, it was because they: (1) voluntarily elected not to take meal periods that were provided to them by Defendant in compliance with California law; or (2) waived their right to meal periods and/or rest breaks.

**FIFTY-THIRD AFFIRMATIVE DEFENSE**

**(Rest Periods - Provided)**

53. Defendant alleges that any rest period claims fail, in whole or in part, because Plaintiff and/or the putative class members were provided with and/or authorized and permitted to take all legally required rest periods.

**FIFTY-FOURTH AFFIRMATIVE DEFENSE**

**(Rest Periods – Voluntarily Skipped)**

54. Defendant alleges that the any rest period claims fail, in whole or in part, because Plaintiff and/or the putative class members voluntarily skipped or waived rest breaks.

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

**FIFTY-FIFTH AFFIRMATIVE DEFENSE**

**(Meal Breaks – No Automatic Liability)**

55. Defendant alleges that to the extent Plaintiff and/or members of the putative class Plaintiff purports to represent have time records that appear to show missed, short, or delayed meal periods, automatic liability does not result, because Plaintiff and/or members of the putative class were either compensated for noncompliant meal periods, or were provided compliant meal periods during which they chose to work. *See Donohue v. AMN Servs., LLC*, 11 Cal.5th 58, 77 (2021).

**FIFTY-SIXTH AFFIRMATIVE DEFENSE**

**(Failure to Reimburse Business Expenses – Not Reasonably Necessary or Required)**

56. Defendant alleges that any claims for civil penalties pursuant to Labor Code section 2802 are barred, in whole or in part, because the expenses claimed were not reasonably necessary/required for job and/or were not incurred in direct consequence of the discharge of their duties.

**FIFTY-SEVENTH AFFIRMATIVE DEFENSE**

**(No Reason to Know of Expense)**

57. Defendant alleges that any claim for penalties pursuant to Labor Code section 2802 is barred, in whole or in part, because Defendant did not know, and had no reason to know, of the unreimbursed expenses claimed.

**FIFTY-EIGHTH AFFIRMATIVE DEFENSE**

**(Waiting Time Penalties – Good Faith Dispute)**

58. Defendant alleges that any claims for penalties pursuant to Labor Code section 203 are barred, in whole or in part, because a good-faith dispute exists over whether wages are owed.

**FIFTY-NINTH AFFIRMATIVE DEFENSE**

**(Waiting Time Penalties – Not Willful)**

59. Defendant alleges that any claims for penalties pursuant to Labor Code section 203 are barred, in whole or in part, because any failure to pay waiting time penalties was not intentional or willful.

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

**SIXTIETH AFFIRMATIVE DEFENSE**

**(Waiting Time Penalties – Statute of Limitations)**

60. Defendant alleges that any claims for penalties pursuant to Labor Code section 203 are barred, in whole or in part, by the statute of limitations, as any claim stopped accruing upon the filing of the complaint.

**SIXTY-FIRST AFFIRMATIVE DEFENSE**

**(Wage Statements – Not Knowing and Intentional)**

61. Defendant alleges that any claims for penalties pursuant to Labor Code section 226 are barred, in whole or in part, because Plaintiff and/or the putative class members were not "injured" thereby and/or because Defendant alleged failure to comply with California Labor Code section 226(a) was not a "knowing and intentional failure" under California Labor Code § 226(e).

**SIXTY-SECOND AFFIRMATIVE DEFENSE**

**(Wage Statements – Good Faith Belief)**

62. Defendant alleges that Defendant acted with a reasonable and good faith belief that it complied with its obligations, if any, under the California Labor Code, specifically including sections 226, 226.3, and 226.7 thereof, as to Plaintiff and/or the putative class members.

**SIXTY-THIRD AFFIRMATIVE DEFENSE**

**(Wage Statements – Substantial Compliance)**

63. Defendant alleges that any claims for penalties pursuant to Labor Code section 226 are barred, in whole or in part, because Defendant substantially complied with all applicable laws, statutes, regulations, and applicable Wage Orders.

**SIXTY-FOURTH AFFIRMATIVE DEFENSE**

**(Timing of Wage Payments)**

64. Defendant alleges that any claims for penalties, including, but not limited to penalties predicated on Labor Code sections 201-204, are barred, in whole or in part, because (1) there are bona fide disputes as to whether Defendant failed to timely pay all wages due, (2) Defendant has not willfully failed to pay such compensation, if any is owed, and/or (3) to impose penalties in this case would be inequitable and unjust.

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

**SIXTY-FIFTH AFFIRMATIVE DEFENSE**

**(Unfair Business Practices – Adequate Remedies at Law)**

65. Defendant alleges that the claims for equitable relief of Plaintiff and the putative class members are barred, in whole or in part, on the grounds that adequate remedies at law exist.

**SIXTY-SIXTH AFFIRMATIVE DEFENSE**

**(Unfair Business Practices – Claim for Damages)**

66. Defendant alleges that any claims for restitution pursuant to California Business and Professions Code section 17200 *et seq*., are barred to the extent they constitute claims for damages.

**SIXTY-SEVENTH AFFIRMATIVE DEFENSE**

(**Unfair Business Practices – Claim for Penalties**)

67. Defendant alleges that any claims for recovery pursuant to California Business and Professions Code section 17200 et seq., are barred with respect to penalties of any nature.

**SIXTY-EIGHTH AFFIRMATIVE DEFENSE**

**(Unfair Business Practices – No Continuing Violation)**

68. Defendant alleges that Plaintiff's claims for recovery in the form of restitution, disgorgement, or injunctive relief under California Business and Professions Code section 17200 *et seq*. are barred with respect to any alleged violations that have been discontinued, ceased, or are not likely to recur.

**SIXTY-NINTH AFFIRMATIVE DEFENSE**

**(Unfair Business Practices – Lack of Standing)**

69. Defendant alleges that Plaintiff suffered no cognizable injury under California Business and Professions Code section 17200 et seq., and therefore lacks standing to pursue a class action thereunder.

**SEVENTIETH AFFIRMATIVE DEFENSE**

**(Exclusions From Regular Rate of Pay)**

70. Defendant alleges that all forms of compensation or remuneration which are excluded from the regular rate of pay are properly excluded from the calculation of overtime or any other wages due. See e.g., 29 U.S.C. section 207(e).

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

**SEVENTY-FIRST AFFIRMATIVE DEFENSE**

**(Accommodation Provided)**

71. Defendant is informed and believes that a reasonable opportunity for investigation and discovery will reveal, and on that basis allege, that Plaintiff's claims for disability discrimination; retaliation; failure to provide reasonable accommodation; failure to prevent discrimination, harassment, and retaliation; wrongful termination, and related claims are barred, in whole or in part, because Defendant provided the accommodation(s) sought by Plaintiff for her alleged disability.

**SEVENTY-SECOND AFFIRMATIVE DEFENSE**

**(PAGA – Separation of Powers)**

72. As a separate and distinct affirmative defense, Defendant alleges that any claims based on PAGA are barred, in whole or in part, because the prosecution of this matter as a representative action under PAGA, and/or an award of penalties pursuant to PAGA, would violate the constitutionally-based separation of powers doctrine by impermissibly usurping prosecutorial authority assigned to the executive branch of government and impermissibly delegated by PAGA to private attorneys without essential safeguards, including continuing oversight or control by the executive branch.

**SEVENTY-THIRD AFFIRMATIVE DEFENSE**

**(PAGA – Unconstitutional Delegation)**

73. As a separate and distinct defense, Defendant alleges that the Complaint is barred, in whole or in part, because PAGA represents an unconstitutional delegation of the State of California's prosecutorial role to non-elected officials.

**SEVENTY-FOURTH AFFIRMATIVE DEFENSE**

**(PAGA – Claims Not Suitable on a Representative Basis)**

74. As a separate and distinct affirmative defense, Defendant alleges that Plaintiff's claims for penalties under PAGA are not suitable for determination/litigation on a representative basis particularly given the diversity in the allegedly aggrieved employees.

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

**SEVENTY-FIFTH AFFIRMATIVE DEFENSE**

**(PAGA – Standing)**

75. As a separate and distinct affirmative defense, Defendant alleges that Plaintiff lacks standing to bring claims for civil penalties on behalf of others because she is not an "aggrieved employee" and/or has failed to identify said "aggrieved employees" pursuant to PAGA.

**SEVENTY-SIXTH AFFIRMATIVE DEFENSE**

**(PAGA – Failure to Exhaust PAGA Prerequisites)**

76. As a separate and distinct affirmative defense, Defendant alleges that the Complaint is barred, in whole or in part, based on Plaintiff's failure to comply with the pre-filing notice and exhaustion requirements set forth in California Labor Code section 2699.3, or any other provision of the California Labor Code.

**SEVENTY-SEVENTH AFFIRMATIVE DEFENSE**

**(PAGA – Claims Exceed Scope of Notice)**

77. As a separate and distinct defense, Defendant alleges that the Complaint is barred, in whole or in part, because to the extent Plaintiff did exhaust her administrative remedies with the LWDA, the Labor Code and /or Wage Order violations asserted in the Complaint exceed the scope of the Labor Code and Wage Order violations identified in Plaintiff's notice to the LWDA.

**SEVENTY-EIGHTH AFFIRMATIVE DEFENSE**

**(PAGA – Initial Violation)**

78. As a separate and distinct affirmative defense, Defendant alleges, assuming, *arguendo*, that penalties are awarded against Defendant, insofar as Defendant has not been cited by the Labor Commissioner, or received a judgment against it in a court of law, with respect to Plaintiff or the alleged aggrieved employees' Labor Code claims, any civil penalties awarded under the Labor Code must be limited to those penalties applicable to an initial violation.

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

**SEVENTY-NINTH AFFIRMATIVE DEFENSE**

**(PAGA – Stacking of Penalties Impermissible)**

79. As a separate and distinct affirmative defense, Defendant alleges that Plaintiff and/or the allegedly aggrieved employees' claims for penalties under PAGA are impermissible because stacking of penalties is unsupported by law.

**EIGHTIETH AFFIRMATIVE DEFENSE**

**(PAGA – Penalties Unconstitutional)**

80. As a separate and distinct affirmative defense, Defendant alleges that to the extent Plaintiff and/or the allegedly aggrieved employees seek civil or statutory penalties, such claims violate the Fifth, Eighth and Fourteenth Amendments of the United States Constitution and also violate Article 1, sections 7 and 8 of the California Constitution, including the prohibition against excessive fines. *See State Farm Mutual Insurance Company v. Campbell*, 538 U.S. 408 (2003).

**EIGHTY-FIRST AFFIRMATIVE DEFENSE**

**(PAGA – Substantial Compliance)**

81. As a separate and distinct affirmative defense, Defendant alleges that any claim for PAGA civil penalties predicated on the Labor Code, or any applicable Wage Order, must fail because Defendant substantially complied with the applicable laws, statutes, regulations, and applicable Wage Orders. For the same reason, should the Court find a violation of the Labor Code occurred, and such violation gives rise to potential penalties, the Court must exercise its discretion and significantly discount or eliminate any potential penalties owed by Defendant due to its good faith efforts to comply with the Labor Code and/or substantial compliance with the Labor Code.

**EIGHTY-SECOND AFFIRMATIVE DEFENSE**

**(Class or Representative Treatment Improper)**

82. As a separate and distinct affirmative defense, Defendant alleges that this lawsuit and any individual claims may not properly be maintained as a representative or class action because: (a) Plaintiff cannot establish the necessary procedural elements for representative/class treatment; (b) considerations of necessity, convenience and justice do not augur in favor of representative/class

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA
94105
415.433.1940

treatment; (c) individual issues are predominant; and (d) proceeding on a representative/class basis would be unmanageable.

**EIGHTY-THIRD AFFIRMATIVE DEFENSE**

**(PAGA- Penalties for Future Violations Barred – Qui Tam Action)**

83. As a separate and distinct affirmative defense, Defendant alleges that the civil penalties sought by Plaintiff for alleged Labor Code violations occurring after the date of the "written notice" provided by Plaintiff to the Labor Workforce Development Agency ("LWDA") pursuant to Labor Code section 2699.3 ("future violations") are barred because a representative PAGA action, to the extent it is a qui tam action, lacks governmental oversight of the action that is provided in other types of qui tam actions justifying the recovery for future violations under the FCA by qui tam Plaintiff.

**EIGHTY-FOURTH AFFIRMATIVE DEFENSE**

**(No Negligent Hiring, Supervision and Retention)**

84. Defendant alleges that it did not hire any employee(s) who was or became unfit or incompetent to perform the work for which they were hired, and/or did not know nor should it have known that such employee(s) was allegedly unfit or incompetent and that this unfitness or incompetence created a particular risk to others; and that no such alleged unfitness or incompetence harmed Plaintiff.

**EIGHTY-FIFTH AFFIRMATIVE DEFENSE**

**(Employment Records Provided / No Violation of Labor Code §§ 226 or 1198.5)**

85. Defendant alleges that, to the extent that Plaintiff requested a copy of her personnel file and/or payroll records pursuant to California Labor Code sections 226 and/or 1198.5, Defendant complied with such request. Defendant alleges that it produced to Plaintiff her personnel and payroll records, to the extent requested.

**EIGHTY-SIXTH AFFIRMATIVE DEFENSE**

**(Workers' Compensation Exclusivity and Preemption)**

86. As a separate and distinct affirmative defense, Defendant alleges that the Complaint, and each cause of action alleged therein, seeking damages for emotional and/or physical injury are

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

preempted and barred by the exclusive remedy provisions of the California Workers' Compensation Act, California Labor Code § 132a and 3600, et seq., in that: (1) the injuries complained of allegedly occurred when both Plaintiff and Defendant were subject to California Labor Code §§ 3600 to 3601; (2) at the time of the alleged injuries, Plaintiff was performing services incidental to her employment and was acting within the course and scope of her employment; (3) Plaintiff alleges that the injuries were caused by her employment; (4) Plaintiff's employment was covered by workers' compensation; and (5) Defendant paid the entire costs for that coverage. Accordingly, this Court lacks subject matter jurisdiction over said claims.

**EIGHTY-SEVENTH AFFIRMATIVE DEFENSE**

**(No Violation of Public Policy)**

87. As a separate and distinct defense, Defendant alleges that Plaintiff's claim for wrongful termination is barred because Plaintiff was not terminated in violation of any fundamental, well-established public policy embodied in law or statute.

**EIGHTY-EIGHTH AFFIRMATIVE DEFENSE**

**(No Protected Activity)**

88. As a separate and distinct affirmative defense, Defendant alleges that Plaintiff fails to state a claim for retaliation because she did not engage in protected activity.

**EIGHTY-NINTH AFFIRMATIVE DEFENSE**

**(No Knowledge of Protected Activity)**

89. As a separate and distinct affirmative defense, Defendant alleges that Plaintiff fails to state a claim for retaliation because Defendant had no knowledge of her purported protected activity.

**NINETIETH AFFIRMATIVE DEFENSE**

**(Failure to State a Claim for Attorneys' Fees and Costs)**

90. As a separate and distinct affirmative defense, Defendant alleges that Plaintiff's Complaint, and each cause of action alleged therein, is barred, in whole or in part, because Plaintiff has failed to state facts sufficient to entitle her to costs of suit incurred herein and/or an award of attorneys' fees.

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

**NINETY-FIRST AFFIRMATIVE DEFENSE**

**(Cal. Labor Code §§ 98.6, 1102.5(b) Preemption)**

91. As a separate and distinct affirmative defense, Plaintiff's Labor Code retaliation claims are barred, in whole or in part, because they are preempted by the LMRA and/or NLRA. (*See Sarmiento v. Sealy, Inc.,* 367 F. Supp. 3d 1131, 1151 (N.D. Cal. 2019); *Luke v. Collotype Labels USA, Inc.,* 159 Cal. App. 4th 1463 (2008).)

**NINETY-SECOND AFFIRMATIVE DEFENSE**

**(No Intentional, Reckless, Outrageous, Extreme, Nor Willful Conduct)**

92. As a separate and distinct affirmative defense, Defendant alleges that if Plaintiff suffered any emotional distress (and Defendant denies that Plaintiff suffered any such distress), it was not the intent of Defendant, or any person acting on Defendant's behalf, to inflict such emotional distress on Plaintiff. Additionally, Plaintiff's Complaint, and each purported cause of action therein, or some of them, cannot be maintained against Defendant because, assuming, *arguendo*, any conduct alleged by Plaintiff occurred, such conduct was neither in reckless disregard of Plaintiff's rights, nor was it the result of purposeful, knowing, bad faith, intentional, willful, fraudulent, deliberate, callous, oppressive or malicious conduct by Defendant. Furthermore, Defendant alleges that Plaintiff's Complaint, and each purported Cause of Action therein, for intentional infliction of emotional distress, cannot be maintained against Defendant because the conduct alleged was neither outrageous nor extreme. This defense is being asserted as a matter of right. Defendant believes further investigation and discovery will establish facts to support this defense.

**NINETY-THIRD AFFIRMATIVE DEFENSE**

**(Federal Arbitration Act)**

93. As a separate and distinct affirmative defense, Defendant alleges that Plaintiff's Complaint and each cause of action asserted therein is barred on the ground that Plaintiff and some or all of the members of the putative class she seeks to represent entered into a written agreement waiving class claims and requiring that all claims be submitted to final and binding individual arbitration pursuant to the federal arbitration act, 9 U.S.C. § 1, et seq., and, therefore, class claims

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

are barred and Plaintiff's exclusive remedy for her alleged claims is through final and binding individual arbitration.

**NINETY-FOURTH AFFIRMATIVE DEFENSE**

**(California Arbitration Act)**

94. As a separate and distinct affirmative defense, Defendant alleges that Plaintiff's Complaint and each cause of action asserted therein is barred on the ground that Plaintiff and some or all of the members of the putative class she seeks to represent entered into a written agreement waiving class claims and requiring that all claims be submitted to final and binding individual arbitration pursuant to the California arbitration act, Cal. Code Civ. Proc. § 1281, et seq., and, therefore, class claims are barred and Plaintiff's exclusive remedy for her alleged claims is through final and binding individual arbitration.

**NINETY-FIFTH AFFIRMATIVE DEFENSE**

**(Improper Parties)**

95. As a separate and distinct affirmative defense, Defendant alleges that the entities named as Defendants were not Plaintiff's employers and therefore are not proper parties to this action.

**NINETY-SIXTH AFFIRMATIVE DEFENSE**

**(Rounding)**

96. As a separate and distinct affirmative defense, Defendant alleges that at all relevant times any alleged "rounding" of time was proper and permissible pursuant to *See's Candy v. Superior Court*, 210 Cal.App.4th 889, and *Silva v. See's Candy*, 7 Cal.App.5th 235.

**NINETY-SEVENTH AFFIRMATIVE DEFENSE**

**(Adequate Remedy at Law)**

97. As a separate and distinct affirmative defense, Defendant alleges that Plaintiff and/or the purported class members are not entitled to equitable relief insofar as they have an adequate remedy at law and are not entitled to any relief with respect to any and all alleged violations of California Business and Professions Code § 17200, *et seq*. that have discontinued, ceased, and are not likely to recur.

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA
94105
415.433.1940

**NINETY-EIGHTH AFFIRMATIVE DEFENSE**

**(No Jurisdiction)**

98. As a separate and distinct affirmative defense, Defendant alleges that the Court has no personal jurisdiction over Defendant or one or more of the individually named co-defendants it employed, because Defendant or one or more of the individually named co-defendants it employed, has insufficient minimum contacts with the State of California, including pursuant to Cal. Code Civ. Pro. §418.10.

**NINETY-NINTH AFFIRMATIVE DEFENSE**

**(Exemption)**

99. As a separate and distinct affirmative defense, Defendant alleges that Plaintiff and some or all of the members of the putative class she seeks to represent are exempt from the requirement to pay overtime and to provide meal and rest breaks by virtue of the applicable exemptions including, but not limited to, the managerial, professional, and/or administrative exemptions.

**RESERVATION OF ADDITIONAL DEFENSES**

Defendant does not presently know all of the facts concerning the conduct of Plaintiff and Plaintiff's claims sufficient to state all affirmative defenses at this time. Accordingly, Defendant expressly reserves the right to amend this Answer should Defendant later discover facts demonstrating the existence of additional affirmative defenses.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant prays for relief as follows:

1. That Plaintiff takes nothing by way of their Complaint in relation to Defendant;

2. That judgment be entered in Defendant's favor and against Plaintiff on all causes of action;

3. That the Complaint be dismissed with prejudice and that judgment be entered against Plaintiff and in favor of Defendant on each claim;

4. That Defendant be awarded costs of suit and attorneys' fees incurred herein as allowed by law; and

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA 94105
415.433.1940

5. That Defendant be awarded for such further relief as the Court deems just and proper.

Dated: December 12, 2024

LITTLER MENDELSON, P.C.

*/s/ Lee. E. Sheldon*

LEE E. SHELDON
ANGELA J. RAFOTH
SAMLECIA GAYE
Attorneys for Defendant
BEAZLEY USA SERVICES, INC.

4916-9550-5412.3 / 058291-1066

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, CA
94105
415.433.1940

**POS-040**

ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: 263310 / 241966 / 296981
NAME: Lee E. Sheldon / Angela J. Rafoth / Samlecia D. Gaye
FIRM NAME: Littler Mendelson, P.C.
STREET ADDRESS: 101 Second Street, Suite 1000
CITY: San Francisco STATE: CA ZIP CODE: 94105
TELEPHONE NO.: 415.433.1940 FAX NO.: 415.399.8490
E-MAIL ADDRESS: lsheldon@littler.com / arafoth@littler.com / sgaye@littler.com
ATTORNEY FOR (*name*): Beazley USA Services, Inc.

**FOR COURT USE ONLY**

ELECTRONICALLY
**FILED**
*Superior Court of California, County of San Francisco*
**12/12/2024**
**Clerk of the Court**
**BY: SAHAR ENAYATI**
**Deputy Clerk**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco 94102
BRANCH NAME: Civic Center Courthouse

Plaintiff/Petitioner: Kiyana Brown
Defendant/Respondent: Beazley USA Services, Inc., et al.

CASE NUMBER: CGC-24-619614
JUDICIAL OFFICER:
DEPARTMENT:

## PROOF OF SERVICE—CIVIL

**Check method of service *(only one)*:**

☐ By Personal Service ☒ By Mail ☐ By Overnight Delivery
☐ By Messenger Service ☐ By Fax

***Do not use this form to show service of a summons and complaint or for electronic service.***
***See USE OF THIS FORM on page 3.***

1. At the time of service I was over 18 years of age **and not a party to this action**.
2. My residence or business address is:
101 Second Street, Suite 1000, San Francisco, CA 94105 (business)
3. ☐ The fax number from which I served the documents is *(complete if service was by fax)*:
4. On *(date)*: December 12, 2024 I served the following **documents** *(specify)*:

Defendant Beazley USA Services, Inc.'s Answer To Complaint

☐ The documents are listed in the *Attachment to Proof of Service-Civil (Documents Served)* (form POS-040(D)).

5. I served the documents on the **person or persons** below, as follows:
   a. Name of person served: Erik J. Christensen / James K. Moore
   b. ☒ *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*
   Business or residential address where person was served:
   Erik J. Christensen: 548 Market Street, Suite 41750, San Francisco, CA 94104 (business)
   James K. Moore: 1155 High Street, Auburn, CA 95603 (business)
   c. ☐ *(Complete if service was by fax.)*
   Fax number where person was served:

   ☐ The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of Service—Civil (Persons Served)* (form POS-040(P)).

6. The documents were served by the following means *(specify)*:
   a. ☐ **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and eight in the evening.

**POS-040**

| CASE NAME: Brown v, Beazley USA Services, Inc., et al. | CASE NUMBER: CGC-24-619614 |
|---|---|

6. b. ☒ **By United States mail.** I forwarded the documents to a co-worker, who printed and enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one):*

(1) ☐ deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

(2) ☒ placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state):* San Francisco, CA

c. ☐ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d. ☐ **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

e. ☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: December 12, 2024

Charisse Goodman
(TYPE OR PRINT NAME OF DECLARANT)

▶ Charisse Goodman
(SIGNATURE OF DECLARANT)

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

**DECLARATION OF MESSENGER**

☐ **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and eight in the evening.

At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on *(date):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

(NAME OF DECLARANT)

▶
(SIGNATURE OF DECLARANT)

POS-050/EFS-050

ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: 263310 / 241966 / 296981
NAME Lee E. Sheldon / Angela J. Rafoth / Samlecia D. Gaye
FIRM NAME: Littler Mendelson, P.C.
STREET ADDRESS: 101 Second Street, Suite 1000
CITY: San Francisco STATE: CA ZIP CODE: 94105
TELEPHONE NO.: 415.433.1940 FAX NO.: 415.399.8490
E-MAIL ADDRESS: lsheldon@littler.com / arafoth@littler.com / sgaye@littler.com
ATTORNEY FOR (*name*): Beazley USA Services, Inc.

FOR COURT USE ONLY

ELECTRONICALLY
**FILED**
*Superior Court of California, County of San Francisco*
**12/12/2024**
**Clerk of the Court**
**BY: SAHAR ENAYATI**
**Deputy Clerk**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco 94102
BRANCH NAME: Civic Center Courthouse

PLAINTIFF/PETITIONER: Kiyana Brown

DEFENDANT/RESPONDENT: Beazley USA Services, Inc., et al.

CASE NUMBER: CGC-24-619614

JUDICIAL OFFICER:

DEPARTMENT:

## PROOF OF ELECTRONIC SERVICE

1. I am at least 18 years old.
   a. My residence or business address is (*specify*):
   101 Second Street, Suite 1000, San Francisco, CA 94105 (business)

   b. My electronic service address is (*specify*):
   chgoodman@littler.com

2. I electronically served the following documents (*exact titles*):
   Defendant Beazley USA Services, Inc.'s Answer To Complaint

   ☐ The documents served are listed in an attachment. *(Form POS-050(D)/EFS-050(D) may be used for this purpose.)*

3. I electronically served the documents listed in 2 as follows:
   a. Name of person served: Erik J. Christensen / James K. Moore
      On behalf of (*name or names of parties represented, if person served is an attorney*):
      Plaintiff Kiyana Brown
   b. Electronic service address of person served :
      erik@goldsummit.legal / jamesmoorelawfirm@gmail.com / assistant@jamesmoorelawfirm.com
   c. On (*date*): December 12, 2024

   ☐ The documents listed in item 2 were served electronically on the persons and in the manner described in an attachment. *(Form POS-050(P)/EFS-050(P) may be used for this purpose.)*

Date: December 12, 2024

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Charisse Goodman
(TYPE OR PRINT NAME OF DECLARANT)

Charisse Goodman
(SIGNATURE OF DECLARANT)



Form Approved for Optional Use
Judicial Council of California
POS-050/EFS-050 [Rev. February 1, 2017]

**PROOF OF ELECTRONIC SERVICE**
**(Proof of Service/Electronic Filing and Service)**

Cal. Rules of Court, rule 2.251
*www.courts.ca.gov*

# EXHIBIT D

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN FRANCISCO

400 MCALLISTER STREET, SAN FRANCISCO, CA 94102-4514

| | |
|---|---|
| KIYANA BROWN<br><br>PLAINTIFF (S)<br><br>VS.<br><br>BEAZLEY USA SERVICES, INC. et al<br><br>DEFENDANT (S) | **Department 304**<br><br>**NO.: CGC-24-619614**<br><br>**Order Denying Complex Designation For Failure to File Application Requesting Designation** |

ATTENTION ALL COUNSEL AND SELF-REPRESENTED PARTIES:

Complex Designation is DENIED without prejudice. The Application for Approval of Complex Designation has not been filed and provided to Department 304 pursuant to San Francisco Superior Court Local Rule 3.5.

Pursuant to Government Code §70616, et seq., parties who do not plan to file an Application for Complex Designation may seek a refund of any complex litigation fees that they have paid.

IT IS SO ORDERED.

DATED: DEC-06-2024

Ethan P. Schulman
JUDGE

CERTIFICATE OF SERVICE BY MAIL

I, the undersigned, certify that I am an employee of the Superior Court of California, County of San Francisco and not a party to the above-entitled cause and that on DEC-06-2024 I served the attached Order Denying Complex Designation For Failure to File Application Requesting Designation by placing a copy thereof in an envelope addressed to all parties to this action as listed below. I then placed the envelope in the outgoing mail at 400 McAllister Street, San Francisco, CA 94102, on the date indicated above for collection, sealing of the envelope, attachment of required prepaid postage, and mailing on that date, following standard court practice.

Dated : DEC-06-2024 By: JULIE RUMSEY

ERIK J. CHRISTENSEN (314595)
GOLD SUMMIT LEGAL, INC.
548 MARKET ST.
STE. 41750
SAN FRANCISCO, CA 94104